**ASSINIBOINE AND SIOUX TRIBES OF THE FORT PECK INDIAN RESERVATION, et al.**

v.

**The UNITED STATES.**

**No. 773–87L.**

United States Claims Court.

Jan. 4, 1989.

Marvin J. Sonosky, Washington, D.C., attorney of record, for plaintiffs. William R. Perry, and Sonosky, Chambers & Sachse, of counsel.

James M. Upton, Washington, D.C., with whom was Asst. Atty. Gen. Roger J. Marzulla, for defendant.

## MEMORANDUM OF DECISION
### and ORDER

HARKINS, Senior Judge.

Plaintiffs, Assiniboine and Sioux Tribes of the Fort Peck Indian Reservation (Tribes), on October 25, 1988, filed a motion for sanctions pursuant to RUSCC 11 against defendant's counsel and defendant. The Fort Peck Tribes contend that sanctions are warranted because defendant's March 17, 1988, motion to dismiss, or in the alternative, for summary judgment, (1) was not based on any "reasonable inquiry" regarding the facts or law; (2) was not "well grounded in fact"; (3) was not "warranted by existing law"; and (4) on the further ground that defendant's counsel of record persisted in pressing the motion even after it became clear that the motion was without foundation or basis.

RUSCC 11 requires every pleading, motion, or other paper to be signed by the attorney of record. The rule also provides that the signature of an attorney or party constitutes a certificate by him that (1) he has read the pleading, motion, or other paper, (2) to the best of his knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law, and (3) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needlessly increase costs. In the event a pleading, motion, or other paper is signed in violation of the rule, the court, on motion or on its own initiative, "shall impose upon the person who signed it, a represented party, or both, an appropriate sanction." The sanction may include an order to pay the expenses reasonably incurred because of the filing, and such expenses may include reasonable attorney fees.

RUSCC 11 is patterned on Rule 11 of the Federal Rules of Civil Procedure (FRCP). Amendment of FRCP 11 in 1983 expanded significantly the responsibility imposed on attorneys when signing pleadings or motions. *Coburn Optical Industries Inc. v. Cilco, Inc.*, 610 F.Supp. 656, 658 (M.D.N.C. 1985). The pre–1983 rule required a showing of bad faith before imposition of any sanctions would be permitted. This bad faith requirement was eliminated. The 1983 amendment imposed an affirmative

prefiling obligation on counsel to inquire as to the applicable facts and law.

The Advisory Committee on Rules explained the purpose of the 1983 amendment was to facilitate imposition of sanctions when there is a failure to conduct an objectively reasonable inquiry into the facts prior to filing. The Notes include:

* * * The new language is intended to reduce the reluctance of courts to impose sanctions, see Moore, Federal Practice ¶ 7.05, at 1547, by emphasizing the responsibilities of the attorney and reinforcing these obligations by the imposition of sanctions. * * *

The new language stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule. The standard is one of reasonableness under the circumstances. [* * *] This standard is more stringent than the original good-faith formula and thus it is expected that a greater range of circumstances will trigger its violation.

Federal Civil Judicial Procedure and Rules, Notes of the Advisory Committee on Rules, Rule 11, at 34, West Publishing Co. (1988).

Precedent illuminating FRCP 11 is applicable to the imposition of sanctions under RUSCC 11. The test under the amended rule is objective in nature. *Hansen v. Prentice–Hall, Inc.*, 788 F.2d 892, 894 (2d Cir.1986); *Eastway Const. Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985). The standard which controls is one of "reasonableness under the circumstances." *Westmoreland v. CBS, Inc.,* 770 F.2d 1168, 1177 (D.C.Cir.1985). Each case must be examined in light of the particular facts involved, and a ruling involves consideration of the degree of reasonableness in the challenged conduct. The conduct of counsel is to be judged as of the time the pleading was filed, and in its ruling, the court is to "avoid hindsight and resolve all doubts in favor of the signer." *Oliveri v. Thompson,* 803 F.2d 1265, 1274–75 (2d Cir. 1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987).

Ruling on plaintiffs' motion for sanctions requires an examination of the factual context in which defendant made its motion on March 17, 1988. The chronology of events is significant as to the reasonableness of counsel's signature on defendant's motion to dismiss or, in the alternative, for summary judgment.

This case is a phase in a continuing contest as to alleged comingling of United States funds with Indian moneys, and misuse of tribal and individual Indian funds, designated in Treasury accounts as Indian Moneys–Proceeds of Labor (IMPL funds). Plaintiffs seek damages for the loss of trust monies and an accounting to establish the amount of such damages. Congress in 1982 abolished the IMPL funds as of September 30, 1982, in legislation that provided the Secretary of the Interior would determine no later than September 30, 1985, the shares of the tribes and individual Indians in the IMPL funds. 25 U.S.C. § 155b (1982).

At the agency level, plaintiffs' efforts to resolve IMPL funds issues with the Bureau of Indian Affairs (BIA) have been contentious since February 4, 1982. Plaintiffs challenged the Secretary's regulations issued October 21, 1983, on special deposits in the IMPL funds. 48 F.R. 48808. The Superintendent of the Fort Peck Indian Agency on October 31, 1985, advised that the Tribes' share, calculated pursuant to the regulations, was $134,491.44. The area director affirmed on October 19, 1986, and the Tribes appealed to the Secretary on December 9, 1986. In connection with this appeal, the Tribes on February 2, 1987, requested three categories of IMPL funds information, supported by backup data, for the time period identified in 25 C.F.R. 114.-5(a)(2), "but not less than 6 years prior to September 30, 1982." The categories were: (1) a list of each tribal trust income producing property, (2) amounts United States received from each property, and (3) amounts disbursed to the Tribes.

This request was processed through BIA's Branch of Formulation and Presentation, Division of Program Development and Implementation, and was forwarded to the Billings area office in early June 1987. The Billings area office advised that plain-

tiffs on March 30, 1987, had been provided item (1), that the Billings area office "would have to contract to furnish items (2) and (3)" and that a request for proposals (RFP) for the contract "was soon to be issued." As a result of this information, a response was prepared for the Assistant Secretary–Indian Affairs, which was signed on June 22, 1987.

The June 22, 1987, letter recited that the Tribes' February 2, 1987, letter specifically requested information "for the time period identified in 25 C.F.R. 114.5(a)(2) but not less than 6 years prior to September 30, 1982," and stated:

> By letter dated March 30, 1987, the Fort Peck Agency Superintendent provided the listing contained in item (1) to the Tribes.
>
> In order to expedite the process, the Bureau will contract for the necessary audits and accounting services required to compile the data listed in items (2) and (3). Solicitation for the contract has been synopsized, and it is expected to be awarded in August 1987. When compiled, the data will be forwarded directly to the Tribes.

Plaintiffs' complaint, filed in this court on December 18, 1987, asserted the Tribes had no obligation to further exhaust administrative remedies. The complaint in paragraph 39, captioned "The Tribes' Administrative Appeal" did not refer to the February 2, 1987, letter or to the June 22, 1987, response.

The Billings area office executed on February 21, 1988, a contract for the accounting services that resulted from the RFP that had been synopsized in June 1987 (CPA contract). The subject matter of the CPA contract, however, was concerned with an accounting relative to an embezzlement by a BIA employee, and covered the period June 1, 1981—July 10, 1986. The contract did not deal with an accounting for IMPL funds, and it covered only one year of the period requested in the Tribes' February 2, 1987, letter, and confirmed in BIA's June 22, 1987, response.

Duard Barnes, Assistant Solicitor, General Indian Legal Activities, is the Interior Department representative to the Justice Department in this case. In the course of preparing the litigation report, Mr. Barnes on February 26, 1988, checked on the status of the CPA contract. He was told by the Chief of BIA's Branch of Formulation and Presentation, Division of Program Development and Implementation that the CPA contract had been awarded recently, and that the accounting was expected to be completed in May or June 1988. In the litigation report, Mr. Barnes recommended defendant should file a motion to dismiss for failure to exhaust administrative remedies.

On March 16, 1988, Maurice W. Babby, BIA's Acting Director of Administration, signed an affidavit which had been prepared by Mr. Barnes. As Acting Director, Mr. Babby was responsible for appeals from determinations under 25 U.S.C. § 155b concerning the ownership of funds in IMPL escrow accounts. The affidavit stated that the Tribes' December 6, 1986, appeal was pending, and that the Tribes' February 2, 1987, letter defined what the accounting should cover. The affidavit included the following:

> 3. By letter dated June 22, 1987, the Acting Assistant Secretary—Indian Affairs advised counsel for the Tribes that the requested accounting would be made and that no further action would be taken on the Tribes' appeal pending completion of the accounting.
>
> 4. The accounting is being contracted out and has only recently been awarded to a Certified Public Accountant. It is estimated that the accounting will not be completed before May or June, 1988.
>
> 5. Action on the appeal filed by the Assiniboine and Sioux Tribes of the Fort Peck Indian Reservation is now awaiting completion of the accounting.

Defendant filed its motion to dismiss or, in the alternative, for summary judgment, on March 17, 1988. The sole ground for defendant's motion was that plaintiffs had failed to exhaust administrative remedies. The motion was supported by the affidavit of Maurice W. Babby. Defendant's proposed findings of uncontroverted fact in

support of the motion stated in item 10: "The private contractor is still working on the requested accounting."

After Mr. Babby had signed the March 16, 1988, affidavit and defendant's March 17, 1988, motion had been filed, the Chief, BIA's Branch of Formulation and Presentation, Division of Program Development and Implementation, in a late March telephone conversation with the Billings area office asked for a copy of the CPA contract. During the discussion, BIA headquarters in Washington learned that the CPA contract covered only one year (1981) of the 6–year period that the Tribes had requested for the IMPL funds accounting.

On March 25, 1988, plaintiffs served a notice to depose Mr. Babby, to commence at 10 a.m. on April 4, 1988. On April 1, 1988, defendant filed a motion for a protective order to prevent the deposition, or for a stay of all discovery, (other than discovery, allowed March 1, 1988, limited to numerosity issues relative to class certification). On April 1, 1988, plaintiffs again served a notice to depose Mr. Babby, to commence on June 14, 1988.

On April 4, 1988, BIA headquarters received a copy of the CPA contract from the Billings area office. BIA's Assistant Director for Administration advised that the CPA contract could be amended to cover the 6–year period the Tribes had requested, but that such amendment would cost $20,000. On April 22, 1988, the Budget Coordinator for the Office of the Deputy to the Assistant Secretary—Indian Affairs (Trust and Economic Development) was asked if litigation support funds were available. It later was discovered that all funds had been obligated.

In their opposition to defendant's April 1, 1988, motion for a protective order, plaintiffs on May 3, 1988, filed an exhibit which was a memorandum dated April 20, 1987, from the Assistant Secretary—Indian Affairs to the Navajo Area Director (Navajo Memorandum). This memorandum concerned "Administrative Appeals Regarding the Distribution of Navajo IMPL Escrow Funds." Plaintiffs argue that the Navajo memorandum establishes that no adminis-

trative remedy was available after the statutory deadline of September 30, 1985. With respect to the Navajo Tribe's administrative appeal of the Area Director's determination of shares in the IMPL Escrow funds, the Navajo memorandum states:

Since the time for making determinations of shares in the IMPL escrow funds expired under 25 U.S.C. § 155b on September 30, 1985, no redetermination of the Tribe's share could be made after that date.

On May 20, 1988, plaintiffs filed a motion for leave to amend their complaint, on the basis of newly acquired information. This motion was allowed, and plaintiffs' first amended complaint was filed July 19, 1988. The amended complaint contains substantial changes in paragraph 43, captioned "The Tribes administrative appeal" and in paragraph 44, captioned "No effective administrative remedy." These paragraphs specifically refer to the June 22, 1987, letter, concerning a contract for accounting services regarding the Tribes IMPL funds, and to the September 30, 1985, statutory deadline applicable to the power to revise shares in IMPL funds determined under 25 U.S.C. § 155b.

On May 25, 1988, defendant's motion for a protective order was denied. Plaintiffs were authorized to depose Mr. Babby, and Mr. Babby was directed to bring to the deposition the CPA contract described in his affidavit, and such documents as relevant to establish the status of any accounting pursuant to such contract.

On June 17, 1988, the BIA's budget office authorized $20,000 to fund an amendment to the CPA contract "to cover the period identified in 25 C.F.R. 114.5(a)(2) but not less than 6 years prior to September 30, 1982." The amendment was to provide the Tribes "with the listing specified in subparagraphs (2) and (3) of the June 22, 1987, letter to the Tribal Attorney." The CPA contract, on June 23, 1988, was amended to include this new scope of work.

Mr. Babby's deposition, originally scheduled for June 14, 1988, at defendant's request, had been postponed to June 28, 1988.

Mr. Babby was deposed on June 28 and June 30, 1988.

With their response to defendant's motion to dismiss, or, in the alternative for summary judgment, the Tribes filed on August 19, 1988, another copy of the Navajo Memorandum. Plaintiffs argued: (1) the Secretary had ruled that the statutory deadline imposed by Congress cut off his power to make redeterminations of IMPL funds shares as of September 30, 1985, and (2) once the Navajo Memorandum was delivered to Justice Department counsel on May 3, 1988, no valid reason existed for counsel to persist with defendant's exhaustion argument.

At a status conference on October 12, 1988, counsel for defendant was asked whether, if the administrative remedy were to be pursued, the Secretary could grant any relief beyond the $134,491.44 already determined. Mr. Barnes stated that the Secretary could grant no relief beyond that sum. Pursuant to the conference discussions, defendant's March 17, 1988, motion to dismiss or, in the alternative, for summary judgment was denied. The order states that further efforts toward exhaustion of administrative remedies would be futile and that material issues of fact are in dispute.

## DISPOSITION

When defendant's attorney of record signed the March 17, 1988, motion to dismiss or, in the alternative, for summary judgment, he certified, pursuant to RUSCC 11, that to the best of his knowledge, information and belief formed after reasonable inquiry that the motion was well grounded in fact and was warranted by existing law. The result of defendant's motion, if the motion were to be allowed, would be either a dismissal without prejudice to permit completion of the administrative proceedings, or, summary judgment on the merits of that issue. In either event, judicial consideration in this case of the Tribes' claims would be terminated.

Defendant's motion was based on the contention that the Tribes had failed to exhaust their administrative remedies, and that the administrative procedures could not be exhausted until the accounting requested by the Tribes was completed so that the Secretary could act on a "complete factual record." Defendant's exhaustion contention was supported by Mr. Babby's March 16, 1988, affidavit, the Tribes' February 2, 1987, request for an accounting, and the Assistant Secretary's June 22, 1987, promise to obtain accounting services by contract. The motion also was supported by proposed findings of uncontroverted fact, as required by RUSCC 56(d)(1).

The motion stated that the private contractor "is still in the process of performing the accounting requested by plaintiffs" and that "the contractor retained is presently working on the project." In fact, on March 17, 1988, the BIA had not engaged a private contractor to do the accounting requested by the Tribes; the BIA was not in the process of performing the accounting requested by the plaintiffs, and no contractor was working on the project that was the subject matter of the administrative proceedings defined in the February 2, 1987—June 22, 1987, communications.

Defendant's alternative motion for summary judgment is subject to the provisions of RUSCC 56(f), with its requirement that supporting affidavits "shall be made on personal knowledge." When Mr. Babby signed the affidavit on March 16, 1988, he had never examined any of the documents referred to in his affidavit; and he was not familiar with any of the details of the accounting that had been requested in plaintiffs' February 2, 1987, letter and promised in the June 22, 1987, response. Mr. Babby had never had anything to do with the administrative proceedings relative to the Tribes' IMPL funds appeal.

Mr. Babby on March 16, 1988, had never seen the CPA contract, had nothing to do with the award of that contract, and was not in a position to know the answers to any questions regarding the CPA contract. Mr. Babby relied on representations of BIA representatives and the Assistant Solicitor. He signed an affidavit prepared by others, without knowing that the subject matter of the CPA contract was an accounting rela-

tive to an embezzlement, and was not to an accounting for the Tribes' IMPL funds.

■ Under RUSCC 11, the issue is whether in the particular circumstances defendant's counsel of record could form a reasonable belief that the motion was well grounded in fact. Defendant's motion was founded on the concept that administrative proceedings were underway as a continuing activity. The Tribes had appealed on December 9, 1986, to the Secretary, and an administrative remedy was being pursued through June 22, 1987, when the Assistant Secretary responded to plaintiffs' request for an accounting of the IMPL funds. As a matter of fact, however, by the time the CPA contract was signed on February 21, 1988, the Secretary was not going forward with the Tribes appeal. The Billings area office had let a contract that was concerned with an unrelated matter, an accounting for an embezzlement. By February 21, 1988, the Tribes' administrative proceeding had lapsed through lack of attention at BIA headquarters and BIA's interest in other matters.

■ Defendant's counsel of record asserts that reliance on Mr. Babby's affidavit and its recital that the statements therein were true and correct "to the best of my information and belief," when coupled with the information provided before March 17, 1988, to the Department of Justice by the Assistant Solicitor of the Interior Department, is adequate to establish a reasonable belief that the motion was well grounded in fact. RUSCC 11 requires more.

Defendant's counsel of record did not speak with Mr. Babby before the motion to dismiss or, in the alternative, for summary judgment was filed. No inquiry was made as to Mr. Babby's personal knowledge, or whether Mr. Babby knew anything about administrative proceedings relative to the Tribes' appeal of the IMPL funds determination.

Defendant asserts that top administrative officials, such as Mr. Babby, traditionally, and by necessity must, rely on agency staffs for much of the information comprising their knowledge of the status of agency operations. In its response to plaintiffs'

October 25, 1988, motion for sanctions, defendant submitted affidavits from Stella E. Delaware, Chief, BIA Branch of Formulation and Presentation, Division of Program Development and Implementation, and Duard R. Barnes, Assistant Solicitor, General Indian Legal Activities. Ms. Delaware did not receive a copy of the contract until April 4, 1988. Neither Ms. Delaware or Mr. Barnes had seen the CPA contract before Mr. Babby signed his March 16, 1988, affidavit or before the March 17, 1988, motion to dismiss or in the alternative for summary judgment was filed. Defendant's counsel of record had not examined the CPA contract or any of its related documents when the motion was filed. Nobody in BIA's Washington headquarters was aware that the CPA contract on March 16, 1988, did not apply to the accounting that was the subject matter of the February 2, 1987—June 22, 1987, exchange of letters or that its time period covered only one year of the accounting period that had been requested and promised.

■ RUSCC 11 imposes affirmative duties upon the attorney who signs the pleadings, motions or other papers. Reliance on a cooperating attorney, or agency counsel, is not adequate justification for misrepresentation of facts central to a determination of the matter involved, even though agency counsel in fact may have prepared crucial documents that support the motion. RUSCC 11 requires the counsel of record who signs a paper to take responsibility, even though that responsibility may be shared. *Coburn Optical Industries, Inc. v. Cilco, Inc.,* 610 F.Supp. at 660. The attorney of record must make a prefiling inquiry that is adequate to establish the validity of the facts which are basic to the paper's subject. Agency counsel's version of the facts should not be accepted on faith. Agency operations should be probed sufficiently to determine the validity of the facts relied upon. *Fleming Sales Co. v. Bailey,* 611 F.Supp. 507, 519 (N.D.Ill.1985).

Before plaintiffs' case was filed, the Assistant Secretary—Indian Affairs, on April 20, 1987, had ruled in the Navajo Memoran-

dum that as of September 30, 1985, no redeterminations of IMPL funds shares could be made. Defendant's counsel of record in his analysis of law applicable to the Tribes' complaint did not discover the April 20, 1987, agency ruling on the Secretary's power under 25 U.S.C. § 155b. Absence of a reference to the April 20, 1987, ruling in the agency litigation report may excuse failure to discover the Secretary's position on appeals of IMPL funds determinations. After May 5, 1988, however, defendant's counsel of record had actual notice of the Secretary's ruling, and was obligated to reexamine defendant's contention that administrative proceedings remained to be completed. RUSCC 11 imposes an obligation on counsel to review and reevaluate a position when information is discovered that puts into question the basis for the original motion. This continuing obligation has been described as follows:

> Furthermore, attorneys must realize that the inquiry required by rule 11 is not a one time only obligation. Counsel have a continuing obligation to review and re-evaluate their position as the case develops. [Citations omitted.] Thus, a document that initially satisfies the requirements of rule 11 may later turn out to be the basis for rule 11 sanctions as new facts are discovered which show that there is no longer a good faith basis for the document. Upon discovering that a good faith basis no longer exists, it is incumbent upon the appropriate counsel and party to take necessary actions to ensure that the proceedings do not continue without a reasonable basis in law and fact.

*Robinson v. National Cash Register Co.*, 808 F.2d 1119, 1127 (5th Cir.1987).

■ As a litigant, the United States is in the same position under the court's procedural rules as any private litigant. *M.A. Mortenson Co. v. United States*, 15 Cl.Ct. 362, 364 (1988). RUSCC 11 applies to the attorney of record for the United States as much as it applies to the attorney of record for plaintiff.

One purpose of the requirement that there be but one attorney of record for a party at any one time (RUSCC 81(d)(1)) is to fix responsibility for the signing of papers on a specific individual as an officer of the court. In claims against the United States, this requirement has a special significance as to defendant's attorney of record that differs from that of the attorney of record for private litigants. The Attorney General is responsible for all litigation by and against the United States. In numbers of attorneys in the Department of Justice, and in the legal and administrative personnel in the numerous agencies, the magnitude of the Government's litigation task and procedures vastly exceed any counterpart in the private sector. Agency counsel and administrative personnel are not subject to the direct control of the court. The court, and opposing counsel, depend on and must be in a position to rely on defendant's counsel of record for accuracy in ascertaining the facts of the agency transaction involved.

RUSCC 11 reinforces the special significance of the requirement that the United States be represented by a single attorney of record. The rule comes into operation by the act of signing a particular pleading, motion, or other paper. Responsibility to avoid infractions of the rule that can trigger sanctions is borne by the person signing, and no sanctions may be imposed unless the pleading, motion or other paper is signed in violation of the rule's requirements.

The purpose of FRCP 11, and RUSCC 11, is to discourage dilatory or abusive tactics and promote efficiency in the litigation process by lessening frivolous claims or defenses. The objectives of sanctions is to deter future conduct of the offending attorney, and by example, deter other litigants from similar violations. RUSCC 11 permits, once the signature requirements are found to have been violated, imposition of a sanction on the person signing, a represented party, or both.

In the absence of dereliction or error by the person signing, no sanction under the rule is permissible. The direction that a court "shall impose" sanctions when a violation is found indicates that in an appropri-

ate case sanctions are mandatory. RUSCC 11, however, does not require the imposition of the sanction on the signing person. The rule provides discretion for the court to hold either the signing person, or the represented party, or both.

When the rule violation arises from a signing by defendant's attorney of record in a claim against the United States, there are cogent reasons for imposition of a monetary sanction on the represented party only. A consideration of what constitutes a reasonable inquiry under the rule in a claim against the Government involves a weighing of a number of factors, including: time available for investigation, necessity to rely on agency administrative personnel for factual information, and dependence on agency counsel for standards of agency practice and policy under applicable statutes.

These factors confront defendant's attorney of record with obstacles that the attorney of record for a private litigant, even for large corporate claimants, does not face. Attempts to elicit factual information from agency administrative personnel are impeded by indifference, obstructionism, at times deliberate coverup, and at all times elaborate "finger pointing" to responsibilities of others more or less involved. Interagency relationships promote procedures that tend to become a complicated morass that mires efficiency, and effort is reduced to effects produced by pushing on a rope.

In these circumstances, promotion of litigation efficiency is to be derived from a stimulus to corrective action by officials responsible for agency overall operations. Monetary sanctions on the Department of Justice attorney, who at most is a cog in the entire procedure, are not likely to attain the effect desired by the rule. Further, consideration of the ability to pay a meaningful sanction is cogent. *Oliveri v. Thompson,* 803 F.2d at 1281.

It is concluded that necessary corrective action may more readily be achieved by imposing the sanction solely on the United States. Disciplining of the individuals involved in the violation of the requirements of the rule are best administered by the officials responsible for the administrative programs and litigation effort that incurred the financial burden.

Sanctions may be imposed in the absence of any bad faith on the part of the person signing. On the motion here involved, notwithstanding plaintiffs' penchant for florid argument, defendant's counsel of record did not intentionally attempt to mislead the court, or to otherwise act in bad faith.

On the basis of the foregoing, it is determined that defendant's motion to dismiss or, in the alternative, for summary judgment, was signed in violation of RUSCC 11. Sanctions under RUSCC 11 are appropriate. In the circumstances of this case, the obligation to compensate plaintiffs for violation of the rule should be borne by defendant.

Accordingly, plaintiffs' October 25, 1988, motion for sanctions is ALLOWED. Defendant shall pay to plaintiffs the reasonable expenses incurred by the filing of defendant's March 17, 1988, motion to dismiss or, in the alternative, for summary judgment, and plaintiffs' motion for sanctions, including a reasonable attorney fee. In the event counsel are unable to agree on a reasonable amount to be paid, further proceedings may be recommended by motion.