**DURABLE METAL PRODUCTS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 427–89C.

United States Claims Court.

July 11, 1990.

Dale C. Nathan, Eagan, Minn., for plaintiff.

Cheryl Rome, with whom was Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen and Tamra Phipps, Washington, D.C., for defendant.

## OPINION

ROBINSON, Judge:

This matter is before the court on Plaintiff's Motion For Injunctive Relief, Partial Summary Judgment, And Other Relief,

filed February 28, 1990. Plaintiff's partial summary judgment motion is based largely upon a portion of a decision which the contracting officer (CO) issued on January 5, 1990, after plaintiff filed suit in this court under Section 10(a)(1) of the Contract Disputes Act of 1978, 41 U.S.C. § 609. Plaintiff's motion requests this court to accept the CO's partial finding for plaintiff on page 6 of his decision with respect to its claim arising out of Modification A00003 to the contract, determine the amount of monetary damages due plaintiff on that claim—which amount was not determined by the CO—and order an immediate payment to plaintiff of that amount. In the alternative, plaintiff asks that this court remand the case to the CO pursuant to 41 U.S.C. § 605(c)(5) for a "final" decision on the amount of damages due plaintiff for its rework claim, and to implement that decision upon issuance. Finally, plaintiff's motion seeks sanctions against defendant under Rule 11 of RUSCC.

Defendant argues that plaintiff has failed to establish as a matter of law that defendant is liable or that plaintiff has incurred any specified amount of damages due to defendant's actions. Defendant also contends that the CO's final decision is not binding upon it. Because plaintiff sued in this court, having deemed its claim denied by the CO, defendant states it is not forced to accept the CO's decision respecting the rework claim, but is entitled to a *de novo* determination on the merits of that claim. Defendant contends that partial summary judgment must be denied since genuine issues of material facts exist which preclude summary judgment. Defendant strongly opposes plaintiff's motion for Rule 11 sanctions on various grounds. For the following reasons, all relief sought by plaintiff's motion will be denied.

*Factual Background*[1]

In 1986 Durable Metal Products Company (plaintiff) was awarded Contract DAAE07–86–R–2689 (Contract) that required plaintiff to produce quantities of cylinder assemblies with various delivery dates in April and May, 1987. On October 30, 1986, Defense Contract Administration Service Management Area (DCASMA) Quality Assurance Representative (QAR) Jimmie Friesen accepted 440 of these assemblies. On a Quality Deficiency Report (QDR) dated December 2, 1986, the Government questioned whether seals on identical cylinder assemblies which plaintiff produced under a prior contract had been properly installed.

Subsequently, on April 10, 1987, the Government issued Modification A00002 to the Contract which established the proper positioning of the seals as it pertained to future production of assemblies under the Contract. Repair of the 440 accepted assemblies and an issue of contract performance on 1,370 assemblies were resolved by issuance of Modification A00003 dated July 23, 1987.[2] Pursuant to plaintiff's request, Dennis Craft, QAR, inspected the 1,370 assemblies on behalf of DCASMA. He noted in QDR 87–003 eight deficiencies in these

---

1. Of necessity, a large portion of the factual background is drawn from plaintiff's complaint and from defendant's opposition to plaintiff's motion.

2. Modification A00003 provides in pertinent part:
   3. As this refers to 0004AA, the contractor having previously met and completed all other requirements and specifications per agreement or referenced meeting, shall by certificate of conformance provide that:
   A. The weld between the space cylinder tube and cylinder end be certified that it meets the requirements of MIL–STD–1261.
   B. 5 cylinder assemblies be tested and meet the 3000 PSI requirements.
   C. 1 cylinder assembly be tested at 4500 PSI.
   D. Chrome plating is present on the cylinder rod.
   E. Mag particle inspection test be accomplished on 10% of the production quantity per MIL–M–11473.
   F. On the outside of the cylinder assembly cap, the placement of the assembly number and manufacturer's code satisfied all MIL–STD 130 requirements.
   G. The weld joint between the cylinder tube and cylinder end be ground smooth to no more than .05 deep from the surface of the cylinder tube and the paint touched up in the grind area.

assemblies.[3] As of August 7, 1987 plaintiff had not provided a certificate of conformance that a mag particle inspection test had been accepted on 10 percent of the production quantity as required by paragraph 3.E. of Modification A00003. On September 25, 1987 plaintiff provided QAR Kraft with the certificate of conformance that all requirements of the contract had been met as it pertained to the 1,370 assemblies. Kraft executed a DD Form 250 accepting the final lot of 1,370 assemblies under the Contract.

On September 22, 1988 plaintiff submitted a written statement of claim to the CO. On April 18, 1989 plaintiff submitted additional data and a statement supporting and supplementing its prior statement of claim. On June 22, 1989, plaintiff submitted its revised request for equitable adjustment (REA) claim.

On August 8, 1989, pursuant to 41 U.S.C. § 605(c)(5), plaintiff filed its complaint in this court after having deemed its amended REA claim submitted to the CO denied in the absence of a CO's final decision. *See generally Vemo Co. v. United States*, 9 Cl.Ct. 217 (1985). On January 5, 1990, CO Stephen J. Wilmer issued his final decision which denied most of plaintiff's claim but on page 6, he stated as follows:

Paragraph 3 of modification A00003 pertains to DMP's agreement to provide a Certificate of Conformance certifying that items A through G of paragraph 3 were accomplished. The intentions and expectations of the Government may not have been as accurately reflected in paragraph 3 as they should have been.

This paragraph also indicates that the product would be accepted when a Certificate of Conformance was provided by DMP certifying that items A thru G were accomplished. It appears that paragraph 3, as interpreted by DMP, would negate the Government's right to verify by inspection, test, or other means that *all* conditions of a contract have been satisfied. However, the Government has the right to verify that the contractor's certifications are appropriate. Paragraph 3 was not interpreted by the Government as having waived these rights. Therefore, when the Government representative asked DMP to perform other criteria required by the contract, to verify the other conditions, the misinterpretation came to light. In retrospect it appears that DMP's interpretation of paragraph 3 fits more closely with the language of the paragraph.

Due to the misinterpretation of paragraph 3 of Modification A00003 by both the Government and DMP, it is my decision that DMP is entitled to an equitable adjustment for CLIN 0004 (rework on the 1,300 units). This decision only pertains to the entitlement for an equitable adjustment for summary item 1.f [of plaintiff's claim submitted to the contracting officer] and does not decide the quantum or dollar amounts. The quantum depends upon DMP establishing causation of damage to DMP and the costs incurred by DMP for the Government's failure to accept product in accordance with paragraph 3 of modification A00003. The quantum to which is [sic] entitled for

---

3. QDR 87–003 provides, in pertinent part:
During final lot inspection of cylinder assemblies contract DAAE07–86–R–2689 [sic], the following deficiencies were noted:
1.A. P/N 10904919 defects noted 1″ dimension out of tolerance;
1.B. Fitting # MS33649 and drawing 10904919 VIEW "B" is not in compliance with specifications;
1.C. Paint coverage inadequate per specification;
2. P/N 10904908 defects noted sharp edges and burrs, rust and required inspection equipment not available.
3. P/N 10904916 defects noted sharp edges, burrs, rust, torn threads, 125 finish out of

tolerance, porosity, and required inspection equipment not available.
4. Hydro pressure tester defects noted gage max pressure 3,000 PSI has no calibration sticker per MIL–STD–45662.
5. Assembly P/N improperly applied per MIL–STD–130.
6. Required specifications per contract requirements not available at time of inspection.
7. P/N 10908611 certification (material) does not meet drawing requirements.
8. Contractors inspection records do not reflect sample sizes per requirements of MIL–STD–105D.

summary item 1.f cannot be decided at this time due to DMP's failure to provide adequate proof of the amount of the equitable adjustment for item 1.f.

Later, CO Wilmer on deposition admitted that the Government had caused expense and delay to plaintiff, that plaintiff was due an equitable adjustment for CLIN 0004 (the rework claim), that plaintiff had in fact been audited, and that although no additional data had been requested from plaintiff in support of its rework claim, additional data in his opinion was needed to determine plaintiff's damages.

On February 2, 1990, plaintiff submitted a claim directly to defendant's attorney at the time, Ms. Evelyn M. Korschgen. This claim matched the parameters of liability which the CO found existed. Plaintiff supplied the information which the CO had testified on deposition was needed in order to determine the amount due plaintiff for its rework claim.

Thereafter, Ms. Korschgen rejected plaintiff's efforts to have the matter determined under General Order 13, the court's alternative dispute resolution (ADR) process since plaintiff was insisting on binding ADR which she stated was against established Department of Justice policy. She also informed plaintiff's attorney that plaintiff would not be paid on any amount claimed to be due as a result of the rework claim since the matter was now in litigation in the United States Claims Court. Oral argument on plaintiff's motion was held on May 16, 1990. On July 3, 1990, at the conclusion of an informal telephone status conference from chambers, in an effort to facilitate a more expeditious handling of the case, the court indicated to the attorneys for the parties how it expected to rule on the issues presented in plaintiff's motion. This opinion constitutes that ruling.

## DISCUSSION

■ Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. RUSCC 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91

L.Ed.2d 265 (1986). A factual dispute is material if it will affect the outcome of the case. *Curtis v. United States*, 144 Ct.Cl. 194, 168 F.Supp. 213 (1959). A movant for summary judgment bears the burden of showing the absence of any genuine issue of material fact. *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1146 (Fed. Cir.1983). In evaluating the merits of a summary judgment motion, this court must view the inferences drawn from the facts "in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *see also D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1146 (Fed.Cir.1983); *Udis v. United States*, 7 Cl.Ct. 379, 383 (1985).

Plaintiff essentially has requested the court to grant partial summary judgment on the sole basis that CO Wilmer in his decision found the Government liable to plaintiff in that plaintiff is entitled to an equitable adjustment for CLIN 0004 (rework on the 1,300 units), even though CO Wilmer refused to find the quantum or any dollar amount of damages attributable to that liability. However, plaintiff has cited no binding legal authority to support its request. In the alternative, plaintiff requests that the court stay this proceeding and, pursuant to 41 U.S.C. § 605(c)(5), remand the case to the CO for issuance by him of a "final" decision as to the amount of damages due plaintiff on its rework claim, and then order defendant to pay plaintiff that amount. The principal evidence plaintiff has submitted in support of its motion for partial summary judgment is the CO's final decision and excerpts from his deposition.

■ It is well settled that the Attorney General of the United States has exclusive authority to conduct suits in the United States Claims Court. 28 U.S.C. § 518(a) (1988). Indeed, 28 U.S.C. § 516 provides that "the conduct of litigation in which the United States ... is a party ... is reserved to officers of the Department of Justice, under the direction of the Attorney General." This power necessarily includes the power to determine all decisions concerning

whether to defend an action, and, if so, in which manner to defend it. *See* Executive Order No. 6166 (1933), *reprinted in* 5 U.S.C. § 901 app. at 491 (1988) and 28 U.S.C. § 518; *see also Hughes Aircraft Co. v. United States,* 209 Ct.Cl. 446, 534 F.2d 889 (1976); *see generally United States v. Newport News Shipbuilding and Dry Dock Co.,* 571 F.2d 1283, 1287–88 (4th Cir.), *cert. denied,* 439 U.S. 875, 99 S.Ct. 212, 58 L.Ed.2d 189 (1978). Thus, the Department of Justice attorneys in this case have the sole authority and control over the conduct of this action on behalf of defendant. Likewise, when the CO fails to issue a decision within the statutorily prescribed time period and the contractor chooses to deem its claim denied, it may file suit in the United States Claims Court. In that event, under the CDA, the CO is divested of his authority over plaintiff's claim unless the Claims Court, in its discretion, concludes to stay the action and remand it to the contracting officer pursuant to 41 U.S.C. § 605(c)(5).[4]

■ Plaintiff cites to 41 U.S.C. § 609(e) in support of its position that CO Wilmer continues to have jurisdiction over plaintiff's claim and that this court can order implementation of his decision. 41 U.S.C. § 609(e) provides that:

> In any suit filed pursuant to this Act [Contracts Disputes Act] involving two or more claims, counterclaims, cross-claims, or third-party claims, and where a portion of one such claim can be divided for purposes of decision or judgment, and in any such suit where multiple parties are involved, the court, whenever such action is appropriate, may enter a judgment as to one or more but fewer than all of the claims, portions thereof, or parties.

In this particular litigation, no one portion of any of the claims can be divided easily for purposes of decision or judgment. Indeed, the court has made no determination as to the merits of any of plaintiff's claims.

The only evidence that plaintiff has presented in support of its motion is a somewhat ambiguous excerpt from CO Wilmer's incomplete and "after the fact" decision and portions of his deposition testimony. The court is not persuaded that there is any one issue or claim which is ripe for separate adjudication at this stage of the proceeding. Accordingly, since none of plaintiff's claims are fully developed to the extent that any one claim could logically and reasonably be separated from another, the court, in its discretion, finds that under § 609(e) it would be inappropriate to separate the rework claim issue from all other issues which are properly before this court.

■ Plaintiff in essence challenges the CO's decision in all respects except that it asks this court to give full effect to only the favorable portion of CO Wilmer's decision—a decision which clearly stopped short of finding any amount of damages—and order the Government to first determine and then pay an amount of damages to plaintiff.[5] However, plaintiff, by filing suit in this court long before the CO rendered a final decision, empowered this court to perform a *de novo* review of all of plaintiff's claim. *See* 41 U.S.C. § 609(a)(3); *Seaboard Lumber Co. v. United States,* 903 F.2d 1560, 1564 (Fed.Cir.1990). Further, the Department of Justice, since it has sole responsibility for defending the United States in this court, may choose to agree or disagree with all or any part of the CO's decision. Regardless, this court can find no legal precedent for a determination that it is in any way bound by this particular CO's decision. Therefore, the court finds that it is not compelled to order defendant to determine and pay plaintiff any amount of damages based upon the CO's incomplete decision.

■ Further, plaintiff's alternative request for a remand of the case under 41 U.S.C. § 605(c)(5) to the CO for a more complete final decision as to the damage

---

**4.** 41 U.S.C. § 605(c)(5) in pertinent part states:

... [I]n the event an appeal or suit is so commenced in the absence of a prior decision by the contracting officer, the tribunal may, at its option, stay the proceedings to obtain a

decision on the claim by the contracting officer.

**5.** In fact, the CO's decision is not "final" because it is patently incomplete with respect to plaintiff's rework claim.

issue is without merit and will be denied. Section 605(c)(5) is clearly a discretionary option for this court. The facts show that this case has proceeded rapidly in discovery. There is no reason to believe that the parties will not be able to complete discovery by October 1, 1990, the present date ordered for closure of discovery. The court is persuaded that judicial resources would be more effectively employed, and an earlier disposition of the matter would be achieved, if the case went forward to trial on *all* issues, especially since our review will be *de novo*, than if it ordered a remand to the CO under § 605(c)(5) for any factual finding relating to plaintiff's damages for the rework claim.

Furthermore, plaintiff has failed to show that there are no genuine issues of material fact in dispute. Plaintiff contended at oral argument in support of its motion for partial summary judgment that there is only one material fact and that fact is undisputed—the contracting officer rendered a final decision with respect to plaintiff's rework claim and this court should require defendant to comply with that decision. However, the above analysis clearly shows that plaintiff, as a matter of law, is not entitled to summary judgment. RUSCC 56. Obviously, this court cannot order defendant to pay plaintiff any amount of damages until those damages have been ascertained during litigation before this court. Since the contracting officer's decision of January 5, 1990 found no amount of damages due plaintiff, this court must first determine the actual damages which plaintiff sustained before even a partial judgment could be entered in plaintiff's favor.[6]

█ Clearly there are several issues of material fact in dispute. For example, defendant disputes whether the Government actually caused the damages plaintiff allegedly sustained, the amount of plaintiff's

damages, if any, the provisions of the contract relied upon by the CO in reaching his rework claim decision, facts surrounding Modification A00003 to the contract, and whether Durable was required to perform and, in fact, performed any other work outside the scope of the contract not relating to Modification A00003. Therefore, the court finds that, even when viewing the facts in a light most favorable to plaintiff rather than to defendant, plaintiff has not met its burden of showing that there are no material factual disputes or that it is entitled to a partial judgment as a matter of law. For this additional ground the court will deny plaintiff's motion for partial summary judgment.

The last issue raised in plaintiff's motion is its request for RUSCC 11 sanctions.[7] The basis for this request is plaintiff's allegation that the Government has adopted a course of conduct intentionally designed to delay this case in order to force plaintiff into bankruptcy. Additionally, plaintiff asserts that Government counsel has made misrepresentations in connection with the Government's policy on use of ADR procedures under RUSCC.

RUSCC 11 provides, in part:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by the attorney of record in his individual name.... The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause

---

6. The CO's decision, gratuitously rendered after suit in this court, is essentially of no legal force and effect. The CO did not act timely in issuing his decision. That decision cannot divest this court of jurisdiction which has already accrued under 41 U.S.C. § 605. The CO's decision was not rendered pursuant to this court's discretion-

ary remand under § 605(c)(5). Accordingly, it is not binding on this court in its determination of the merits of plaintiff's claim.

7. Plaintiff previously filed a motion for sanctions against the government, but withdrew its motion on January 12, 1990.

unnecessary delay or needless increase in the cost of litigation....[8]

 Plaintiff has not alleged facts to support any of the elements of a Rule 11 violation. It is axiomatic that a pleading, motion or other paper must be the basis of a Rule 11 motion. RUSCC 11. The test under Rule 11 is objective. *Hansen v. Prentice–Hall, Inc.*, 788 F.2d 892, 894 (2d Cir.1986). The standard which controls is one of "reasonableness under the circumstances." *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1177 (D.C.C.1985); *Assiniboine and Sioux Tribes v. United States*, 16 Cl. Ct. 158, 160 (1989). The decision of whether to impose sanctions depends upon the degree of reasonableness of the challenged conduct judged as of the time the pleading or other paper was filed. *Assiniboine and Sioux Tribes v. United States*, 16 Cl.Ct. 158, 160 (1989).

 Plaintiff's motion for Rule 11 sanctions against defendant, or defendant's counsel, does not point to a single misstatement of fact or law in any document executed by that counsel to support plaintiff's request for Rule 11 sanctions. Therefore, there is no basis for this court to award Rule 11 sanctions against either defendant or defendant's counsel.[9]

Moreover, plaintiff has offered no evidence to show that any pleading, motion or other paper filed by defendant was interposed for an improper purpose. Specifically, there is no evidence of record as to any effort on defendant's part to harass or to cause unnecessary delay or a needless increase in plaintiff's costs of litigation. Indeed, defendant's counsel uniformly has been amenable to the court's efforts to expedite this proceeding. Furthermore, the determination of whether to agree with plaintiff to proceed under the court's ADR procedures is a tactical decision by defendant which is totally within its counsel's discretion. Although the court may urge the parties to consider resolution under ADR procedures as it has done in this case, adoption of those procedures cannot be compelled or ordered by the court in the absence of the complete agreement of both parties to follow those procedures. In any event, to date the conduct of Government counsel in this case has been entirely reasonable and ethical. *See Assiniboine and Sioux Tribes v. United States*, 16 Cl.Ct. 158, 160 (1989). Therefore, the court, in its discretion, finds that plaintiff's motion for Rule 11 sanctions is without merit.

## CONCLUSION

For the reasons cited in this opinion, plaintiff's motion for injunctive relief, partial summary judgment, and Rule 11 sanctions is denied.

IT IS SO ORDERED.

---

8. Defendant argues that the Government has not waived its sovereign immunity as to Rule 11 sanctions and, therefore, this court cannot sanction defendant or its counsel under Rule 11. In light of the court's finding that Rule 11 sanctions are clearly inappropriate under the facts of this case, this court chooses not to rule on that issue in this opinion.

9. Plaintiff submitted its motion for sanctions on February 28, 1990. At that point defendant had not yet responded to plaintiff's motion for partial summary judgment which was also filed on February 28, 1990. Therefore, it is impossible to base Rule 11 sanctions on defendant's response to plaintiff's motion for injunctive relief, partial summary judgment, and other relief.