The SHARMAN COMPANY, INC.,
Plaintiff–Appellant,

v.

The UNITED STATES, Defendant–
Appellee.

92–5150.

United States Court of Appeals,
Federal Circuit.

Aug. 17, 1993.

Robert E. Steinberg, Porter, Wright, Morris and Arthur, Washington, DC, argued, for plaintiff-appellant. With him on the brief was Matthew S. Bergman.

Shalom Brilliant, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued, for defendant-appellee. With him on the brief, were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, and Thomas W. Petersen, Asst. Director. Also on the brief was Lt. Col. Kevin Sandkuhler, U.S. Marine Corps, of counsel.

Before RICH, MICHEL, and SCHALL, Circuit Judges.

MICHEL, Circuit Judge.

The Sharman Company ("Sharman" or "the contractor") appeals from the judgment of the United States Claims Court,[1] awarding the government $1,391,240 under the Contract Disputes Act of 1978 (CDA), 41 U.S.C. § 601 et seq., following the contractor's repudiation of this contract to make steel water tanks for the Marine Corps. *The Sharman Company v. United States,* No. 90–108C (Cl. Ct. June 12, 1992). The Claims Court held that the government was entitled to return of $1,391,240 in unliquidated progress payments because prior steel price increases, not the government's delays, caused the contractor's decision not to perform.

Sharman filed suit on February 2, 1990, placing the progress payments claim in litigation. Per CDA section 605, a final decision of a contracting officer on a claim is a jurisdictional prerequisite to litigation. Because the contracting officer had not issued a final decision as to either the government counterclaim, or the contractor's mirror image claim regarding the progress payments, both deriv-

ative of the original contractor costs claim, before Sharman filed suit, the Claims Court lacked jurisdiction over both claims and should have dismissed them.

The Claims Court, however, dismissed the contractor's claim for its costs asserted in the original complaint of February 2, 1990 as arising from a termination for the convenience of the government, because that claim had not been presented to the contracting officer. Therefore, the jurisdictional prerequisite was held not met as to this claim.[2]

Additionally, the Claims Court dismissed Sharman's challenge in its original complaint to the default termination as a declaratory judgment complaint beyond its jurisdiction. Since the 1992 amendments to the CDA grant the Claims Court jurisdiction over contractor challenges to default terminations in all non-final cases, the Claims Court now has subject matter jurisdiction over this matter.

Accordingly, we: (1) reverse the money judgment in favor of the government, for lack of jurisdiction; and (2) remand with instructions to address the contractor's independent challenge to the default termination, which is no longer beyond the Claims Court's jurisdiction and in light of our holding requires decision.

## I. BACKGROUND

Sharman contracted with the United States Marine Corps ("the government") for the manufacture of steel water tanks. Due to escalation in steel prices during the term of contract performance, Sharman repudiated the contract. Because Sharman did not complete production of the tanks as required, the government terminated the entire contract[3] for default through a notice and final decision of termination issued by the contracting officer on August 7, 1989.

On September 12, 1989, the government sent a letter to the contractor seeking repay-

---

**1.** As of October 29, 1992, the United States Claims Court became the "United States Court of Federal Claims," pursuant to Title IX of the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506 (1992).

**2.** This aspect of the Claims Court's Order is not appealed.

**3.** The government had terminated for default the option quantities of the contract on July 27, 1989.

ment of progress payments in the amount of $2,066,696.36. The letter was characterized as a "notice of demand for payment of contract debt," and also notified Sharman that if it disputed the amount sought, it could submit a proposal for deferment of collection.

Sharman, however, did not dispute the amount to the contracting officer but instead filed suit in the Claims Court on February 2, 1990. In its complaint, "Sharman sought invalidation of the default termination, conversion of the termination to one for Government convenience and recovery of all uncompensated costs incurred in the contract's performance." *Sharman Co. v. United States,* 24 Cl.Ct. 763, 765 (1991) (as characterized by Claims Court in its ruling on the government's motion to dismiss). The complaint also included a count in quantum meruit asserting entitlement to all the government's progress payments, which Sharman characterized as "payment for the work performed" on the contract, plus additional monies.[4]

The government filed its answer to Sharman's complaint on May 3, 1990, denying Sharman's entitlement to relief as well as its characterization of the government's progress payments as earned.

On June 12, 1990, the government moved to dismiss the complaint for lack of subject matter jurisdiction on the grounds that the complaint did not present a "claim," *i.e.,* an assertion of entitlement to a sum certain presently due and owing, but rather, was essentially a request for declaratory relief concerning the lawfulness of the default termination. Alternatively, the government argued that even if Sharman's complaint were read as including a demand for relief from the debt first noticed in the contracting officer's letter of September 12, 1989, the court lacked jurisdiction because on its face that letter plainly was not a final decision, which did not issue until after suit was initiated.

On October 18, 1990, before the Claims Court ruled on the government's motion to dismiss, the contracting officer sent the contractor another letter regarding return of the progress payments. This letter stated that it was a "notice of the Contracting Officer's final decision," and identified the amount owed in unliquidated progress payments as $1,391,240.29. It was the first statement by the government of a "claim," *i.e.,* the assertion as a matter of right to a sum certain as presently due and owing, on which there was a final decision by the contracting officer.

On December 20, 1991, the Claims Court granted in part and denied in part the government's motion to dismiss. The court dismissed Sharman's claim for convenience termination costs on the grounds that the claim had not been quantified and had never been submitted to the contracting officer. *Sharman,* 24 Cl.Ct. at 766. The court also stated that, in view of *Overall Roofing & Construction, Inc. v. United States,* 929 F.2d 687, 689 (Fed.Cir.1991), the contracting officer's decision on the default termination was, of itself, insufficient to confer jurisdiction with respect to Sharman's challenge. However, the court held that it nevertheless had jurisdiction to entertain Sharman's challenge to the default termination decision as an issue relating to the money claim but not as an independent claim, *i.e.,* a separate cause of action. It viewed the contracting officer's letter of September 12, 1989, concerning return of excess progress payments as a "timely assertion of a repayment demand," 24 Cl.Ct. at 767, which had the effect of quantifying the government's claim inherent in the earlier default termination decision. Accordingly, the Claims Court viewed Sharman's challenge to the termination for default as being properly before it "as a contractor's suit on a quantified Government claim." *Id.* at 768. The court did not explain how this September 1989 notice and demand constituted a "claim" under the CDA and its implementing regulation. Nor did it explain how the September letter met the requirement for a final decision.

In response to the court's partial dismissal, Sharman amended its complaint on January 6, 1992 to include a specific challenge to the

---

4. In its original complaint, Sharman asserts the following:

65. The government has failed to acknowledge that funds forwarded to Sharman [as progress payments] were in payment for the work performed and has failed unconditionally to pay Sharman in full for the work performed.

government's right to payment of the amount representing unliquidated progress payments. The government counterclaimed for the unliquidated progress payments in the amount of $1,391,240. The government also requested that the Claims Court certify the jurisdictional issue for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) (1988), but the request was denied.

On June 11, 1992, the Claims Court ruled from the bench on the merits of the government claim. The Claims Court found that "[i]nasmuch as the escalation in steel prices had begun well before [the date from which the government was responsible for the delay], the Government's delay cannot be considered the source of the contractor's injuries." Accordingly, the Claims Court entered judgment in the amount of $1,391,240 on the government's counterclaim and in light of its ruling in December 1991, dismissed the remainder of the contractor's complaint, *inter alia*, challenging the default termination. Sharman appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3) (1988).

## II. STANDARD OF REVIEW

■ In an appeal of a CDA case, we review *de novo* for errors of law. *See Cooper v. United States*, 827 F.2d 762, 763 (Fed.Cir. 1987) (citing *Milmark Servs., Inc. v. United States*, 731 F.2d 855, 857 (Fed.Cir.1984)). A

**5.** We note that government counterclaims based on fraud have been held to be excluded from the specific jurisdictional prerequisite of a contracting officer's final decision established by section 605(a) of the CDA. *Simko Constr., Inc. v. United States*, 852 F.2d 540, 546 (Fed.Cir.1988). Since the instant case does not involve any fraud claims, we do not address the issue here.

**6.** The specific jurisdictional requirements of the CDA control over broad jurisdictional statutes, such as 28 U.S.C. § 1503 (1988) and 28 U.S.C. § 2508 (1988), granting the Claims Court jurisdiction over government claims in cases where the court has jurisdiction over the plaintiff's claims. *Bulova Watch Co. v. United States*, 365 U.S. 753, 758, 81 S.Ct. 864, 868, 6 L.Ed.2d 72 (1961) ("[I]t is a familiar law that a specific statute controls over a general one 'without regard to priority of enactment.'") (citations omitted); *Broughton Lumber Co. v. Yeutter*, 939 F.2d 1547, 1557 (Fed.Cir.1991) (holding that a narrow specific jurisdictional statute controls over a broad general jurisdictional statute).

determination of whether the Claims Court had jurisdiction in such a case is a question of law. *Transamerica Ins. Corp. v. United States*, 973 F.2d 1572, 1576 (Fed.Cir.1992). Therefore, no deference is due to the Claims Court decision on the dispositive issue here.

## III. ANALYSIS

On appeal, both parties argue that the Claims Court lacked jurisdiction over the contractor's claim and the government counterclaim for return of progress payments. Therefore, before we may review the merits we must first address whether the Claims Court had jurisdiction over any of the claims in suit.

### A. The Government's Counterclaim for Progress Payments

On appeal, the government argues, as it did in its motion to dismiss, that "because the Government's claim for the return of unliquidated progress payments was not the subject of a final contracting officer's decision prior to the commencement of this suit, the Claims Court lacked jurisdiction to entertain the suit." The government is correct.

■ Under the CDA, a final decision by the contracting officer on a claim, whether asserted by the contractor or the government, is a "jurisdictional prerequisite" [5] to further legal action thereon.[6] 41 U.S.C.

Pursuant to 28 U.S.C. § 1503, the Claims Court has "jurisdiction to render judgment upon any ... demand by the United States against any plaintiff in such court." Similarly, 28 U.S.C. § 2508 provides in relevant part:

Upon the trial of any suit in the United States [Claims Court] in which any setoff, counterclaim, claim for damages, or other demand is set up on the part of the United States against any plaintiff making claim against the United States in said court, the court shall hear and determine such claim or demand both for and against the United States and plaintiff.

\* \* \* \* \* \*

These broad jurisdictional statutes make the Claims Court a forum available to the government to bring a claim or counterclaim, where the Claims Court already has jurisdiction over the plaintiff's claim. They were first enacted in 1911, and have not changed since 1948, except to reflect the changes in the name of the forum.

§ 605(a) ("All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer."); 41 U.S.C. § 605(b) ("The contracting officer's decision on the claim shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency, unless an appeal or suit is timely commenced as authorized by this chapter."); *Joseph Morton Co. v. United States,* 757 F.2d 1273, 1279–80 (Fed.Cir.1985) (holding both contractor claims and government counterclaims require contracting officer's final decision); *Paragon Energy Corp. v. United States,* 645 F.2d 966, 971, 227 Ct.Cl. 176 (1981), *aff'd,* 230 Ct.Cl. 884, 1982 WL 25259 (1982); *Burgett Inv., Inc.,* AGBCA No. 81–108–1, 81–1 BCA ¶ 14,-913 (1981) (dismissing newly asserted government counterclaim because under the CDA issuance and receipt of contracting officer's final decision on the claim is a jurisdictional prerequisite). In this context, "claim" refers to "each claim under the CDA for money that is one part of a divisible case." *Joseph Morton Co.,* 757 F.2d at 1281. Moreover, although the recent amendments to the CDA allow post-filing curing of technical defects in certification, they do not dispense with the "jurisdictional prerequisite" of a pre-filing final decision by the contracting officer. *See* 138 Cong.Rec. S17799 (daily ed. October 8, 1992) (statement of Sen. Heflin) (stating that "[a] contracting officer's final decision under the Contract Disputes Act will *remain a jurisdictional prerequisite* to review by the Court of Federal Claims" even after the amendments made by Public Law No. 102–572) (emphasis added).

■ As the Claims Court itself noted, jurisdiction must be determined "under the actual circumstances existing at the time a complaint is filed," 24 Cl.Ct. at 769; *accord Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 830, 109 S.Ct. 2218, 2221–22, 104 L.Ed.2d 893, *reh'g denied,* 492 U.S. 932, 110 S.Ct. 12, 106 L.Ed.2d 627 (1989) (stating that "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed."). Here, the jurisdictional prerequisite as to both the contractor's claim and the government's counterclaim for progress payments was not met because there was no final decision of the contracting officer at the time that Sharman filed its initial complaint, alleging, in part, entitlement to the government's progress payments. Neither the August 7, 1989 default termination decision, the September 12, 1989 demand letter, nor the October 18, 1990 "final decision" letter, alone or in combination, qualifies as a valid and timely final decision of the contracting officer on the government's counterclaim or the contractor's mirror image claim.

Furthermore, although Sharman amended its complaint on January 6, 1992 to include an explicit challenge to the government's right to return of the unliquidated progress payments, this amendment merely restated, *inter alia,* Sharman's earlier assertion of entitlement to those same payments for the same partial performance in the quantum meruit count of its original complaint.

By contrast, the more specific jurisdictional provisions of the CDA were enacted in 1978, to establish a new statutory framework "[t]o provide for the resolution of claims and disputes relating to Government contracts...." Pub.L. No. 95–563, 92 Stat. 2383 (Nov. 1, 1978). The overall statutory scheme contemplates that a contracting party must first obtain a final decision of a contracting officer, and only then may an appeal be taken either to the appropriate board of contract appeals or directly to the Claims Court. S.Rep. No. 95–1118, 95th Cong., 2d Sess. 1–2 (1978), *reprinted in* 1978 U.S.C.C.A.N. at 5235–36. Within this statutory framework, a final decision of a contracting officer is a jurisdictional prerequisite to any appeal. 41 U.S.C. §§ 605(a), (b), 606, 609.

The narrow specific statutory framework of the CDA does not conflict with the broad general jurisdictional statutes, which allow the government to get adjudication of its claims in suits properly in the Claims Court. Rather, the CDA provides an additional jurisdictional requirement for disputes covered by the CDA, which modifies the effect of the preexisting general jurisdictional provisions. *See generally Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974) ("[W]hen two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.").

Therefore, it is actually the same claim. Similarly, the added government counterclaim involves the same unliquidated progress payments and the same partial performance, and is therefore effectively the same claim, but made by the other party. Therefore, because the progress payment claim was part of the litigation from the outset, Sharman's later amendment to its complaint, and the corresponding government counterclaim which followed, do not affect our determination. Whether the jurisdictional prerequisite was met must be judged from the time that the progress payment claim became part of the lawsuit—*i.e.*, when the lawsuit was first filed. Here there was no final decision on any such claim at that time.

### 1. The August 7, 1989 Default Termination Decision

■ Although the contracting officer had issued a final decision on the default termination, he had not issued as a final decision the government's demand for the return of unliquidated progress payments when the original suit was filed. The contracting officer's default termination letter of August 7, 1989 could not provide a jurisdictional basis for the government's counterclaim for progress payments because these two claims are not the same. *Crippen & Graen Corp. v. United States*, 18 Cl.Ct. 237, 241 (1989) ("[T]he default claim and the demand for return of the unliquidated progress payments are separate and distinct . . . for jurisdictional purposes."). Therefore, the contracting officer's final decision solely on the default termination does not satisfy the jurisdictional prerequisite of a contracting officer's final decision as to the unliquidated progress payments claim. *Id.* at 240–41 (distinguishing *Nuclear Research Corp. v. United States*, 814 F.2d 647 (Fed.Cir.1987) on the ground that the contracting officer in that case made a final decision on both the default termination and the progress payment claim).

■ Furthermore, the government's claim for return of progress payments is a claim for money damages. Such a claim requires a "written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain." FAR § 33.201 (1992). At the time of the August letter, no such written demand or assertion of present entitlement to a sum certain had been submitted to or issued by the contracting officer. Additionally, the August letter contains no reference to any money entitlement being asserted by the government, let alone to the progress payments. Therefore, the August letter could not possibly constitute a final decision for purposes of the government's money damages claim or the contractor's mirror image claim.

### 2. The September 12, 1989 Demand Letter

■ The September 12, 1989 letter seeking repayment of the progress payments is also not a final decision for jurisdictional purposes on the government's counterclaim. On its face, this letter simply states that it is a "notice and demand for payment"; it does not contain the customary designation "final decision." The text of the September letter also makes clear that it is not a final decision because it specifically invites Sharman to submit a proposal for deferment of collection "if immediate payment is not practicable or if the amount is disputed." 24 Cl.Ct. at 765. As the Claims Court itself acknowledged, such notices are "tentative determinations issued to invite contractor comment rather than as final decisions." *Id.* at 768 (citing *Crippen & Graen*, 18 Cl.Ct. at 240). The September letter, therefore, is not a final decision, either viewed alone, or, as urged by the Claims Court, in the context of the earlier August letter.

■ The Claims Court's theory that the September letter "quantified" a government claim, implicit in the August default termination letter and therefore the two letters taken together constitute a valid final decision on a "claim" for jurisdictional purposes is incorrect.[7] There is no authority that

---

7. The Claims Court also reasoned that it had jurisdiction over the government claim because: "No statute or regulation . . . obliges the Government, once having issued a final decision on a default termination, to preface the exercise of its various *remedies* under the default clause with separate final decision labels." 24 Cl.Ct. at 767 (emphasis added). While arguably neither the

supports the combining of two separate letters from the contracting officer, one constituting a final decision on a default termination—the August letter—and the other demanding a specific amount—the September letter—to create a final decision on a monetary claim. They are two entirely separate communications related to two separate and distinct matters.[8] Even assuming that combining such letters were ever permissible, the facts in this case do not support such a combination. The August letter made no reference to any money entitlement; therefore there was no "claim" in the August letter for the September letter to quantify, as theorized by the Claims Court. Moreover, the amount specified in the September letter was not yet in dispute at the time of the August or September letters; it had been proposed by the contracting officer and not rejected by the contractor. Therefore, these letters do not assert a claim. *Dawco Constr., Inc. v. United States*, 930 F.2d 872, 878 (Fed.Cir.1991) ("[A] claim must seek payment of a sum certain as to which a dispute exists at the time of submission."). Indeed, the amount was later cut nearly in half by the government, unilaterally.[9] Consequently, the September letter, taken alone or in combination with the August letter, provides no final decision for jurisdictional purposes on the government's monetary claim.

### 3. The October 18, 1990 Letter

■ On October 18, 1990, the contracting officer issued a letter, calling itself a "final decision," on the government claim for unliquidated progress payments. As noted by the Claims Court, however, this letter did not issue until "more than six months after this suit was filed." 24 Cl.Ct. at 766. Sharman's original complaint was filed on February 2, 1990, alleging entitlement to the government's progress payments under a quantum meruit theory as part of its "reimburse[ment] ... for the value of the work performed." As noted earlier, this asserted entitlement to the progress payments in Sharman's original complaint is the same "claim" as stated by Sharman's amended complaint and the government's counterclaim, because in each case the "claim" alleges entitlement to the same money based on the same partial performance, only under a different legal label. Therefore, the progress payment "claim" was in litigation between the parties as of the date that Sharman's original complaint was filed.[10]

Once a claim is in litigation, the Department of Justice gains exclusive authority to act in the pending litigation. 28 U.S.C. §§ 516–20 (1988); *Hughes Aircraft Co. v. United States*, 534 F.2d 889, 901, 209 Ct.Cl. 446 (1976). That exclusive authority divests the contracting officer of his authority to issue a final decision on the claim. *Durable*

---

statute nor the regulation expressly requires a "separate final decision" on a government claim arising from a default termination, such a requirement is implicit in the language of section 605(a) of the CDA. It states that "[a]ll claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer." 41 U.S.C. § 605(a). Moreover, the government's claim in this case is a monetary claim for the return of unliquidated progress payments. Such a claim is not merely a "remedy" available under the default clause of the contract, but is a separate and distinct claim available under government contract law.

8. As discussed in the previous section, a challenge to a default termination and a claim for return of progress payments are always separate and distinct for jurisdictional purposes.

9. We note that the fact that the amount of the contracting officer's letter of demand was later modified does not, *in and of itself*, prevent the demand from being a final decision. For example, in *Placeway Construction Corporation v.*

*United States*, 920 F.2d 903 (Fed.Cir.1990), a contracting officer's decision was held to be final despite a statement in the decisional letter that the amount could be revised at a later date, because the decision was for the set amount of the contract balance although it was subject to possible reduction depending on subsequent facts. This case is distinguishable from *Placeway*, however, because here the contracting officer's September letter actually invited negotiation of the amount demanded and therefore was not final.

10. Because claimed entitlement to the progress payments was at issue when the original complaint was filed, this is the time at which jurisdiction must be determined. Therefore, as indicated above, we need not address the effect of Sharman's later amendments to the complaint or the government's counterclaim and their relation to the October 1990 decision to determine whether the Claims Court had jurisdiction.

*Metal Prods., Inc. v. United States,* 21 Cl.Ct. 41, 46 (1990) (filing suit in Claims Court divests contracting officer of authority over plaintiff's claim). Because the progress payment claim was the subject of litigation at the outset, the contracting officer had no authority to issue a final decision on the claim after the complaint was filed. Therefore, the October 1990 final decision letter was issued without authority and consequently is a nullity. It also came too late to affect jurisdiction which must be assessed as of February 1990. As a result, it provides no jurisdictional basis for the government's counterclaim for the progress payments.

### B. The Default Termination Challenge

 The Claims Court dismissed the portion of Sharman's original complaint seeking declaratory judgment that the government's termination for default was unlawful, because it was unaccompanied by a monetary claim.[11] This ruling was correct at the time it was made because *Overall Roofing* required such a result. 929 F.2d at 689. Section 907(b)(1) of Public Law No. 102–572, enacted on October 29, 1992, however, effectively overrules *Overall Roofing* and grants the Claims Court jurisdiction to determine whether a termination for default is proper. Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 907(b), 106 Stat. 4506, 4519.[12] This new jurisdiction applies retroactively to actions that were still awaiting final judgment upon enactment, as this one was.[13]

Therefore, the Claims Court now has jurisdiction to address the contractor's independent challenge to the default termination.[14] In light of our decision reversing the money judgment in favor of the government, the contractor's challenge to the government's termination for default is not moot and there-

---

11. The merits of Sharman's default termination cause of action were clearly never decided by the Claims Court.

12. This provision amends 28 U.S.C. § 1491(a)(2) in relevant part to read as follows:

> The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, *including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act.* (emphasis added).

13. Section 907(b)(2) of Public Law No. 102–572 provides that the amendment granting the Claims Court jurisdiction over challenges to a default termination:

> [S]hall be effective with respect to all actions filed before, on, or after the date of the enactment of this Act, except for those actions which, before such date of enactment, have been the subject of—
> (A) a final judgment of the United States Claims Court, if the time for appeal of that judgment has expired without an appeal having been filed, or
> (B) a final judgment of the Court of Appeals for the Federal Circuit.

14. The dissent cites *United States v. Alabama,* 362 U.S. 602, 604, 80 S.Ct. 924, 926, 4 L.Ed.2d 982 (1960), and *Mrs. W. v. Tirozzi,* 832 F.2d 748, 755 (2nd Cir.1987), for the proposition that, on

appeal, this court must apply the law in effect when it renders its decision, absent clear congressional intent indicating the contrary. This is a correct statement of law. The dissent relies on this authority, however, to further imply that the Claims Court "is deemed to have had jurisdiction in this matter as of February 1990, when Sharman filed its original complaint," and that "the retroactivity provision of [section 907(b)(2)] operates to ratify the court's exercise of jurisdiction." Dissenting opinion at 10. These cases actually stand for a much narrower proposition, however.

In *United States v. Alabama,* the district court dismissed the United States' complaint against, *inter alia,* the State of Alabama in part because the Civil Rights Act of 1957 did not authorize this action against the State. 362 U.S. at 603, 80 S.Ct. at 925–26. Before the case was heard by the Supreme Court, however, Congress expressly authorized such actions against a State. The Supreme Court held that the district court had jurisdiction to entertain the action and therefore remanded the case to the district court. *Id.* at 604, 80 S.Ct. at 926. In *Mrs. W. v. Tirozzi,* the district court dismissed the complaint because the Education of the Handicapped Act, 20 U.S.C. §§ 1400–85 (1987), *did not provide for a private* right of action as asserted by plaintiffs. *Tirozzi,* 832 F.2d at 750–51. While the appeal was pending, Congress provided such a private right of action. The court of appeals reversed and remanded to the district court. Therefore, rather than supporting *post facto* ratification, these cases support remand where, as here, the claim was not decided on the merits because of lack of jurisdiction, later provided legislatively.

fore must be remanded for decision.[15]

## IV. CONCLUSION

A final decision from the contracting officer on the government's monetary claim, the basis of the trial court's judgment, was a prerequisite to jurisdiction over this claim in the Claims Court. Because this claim was effectively put in litigation by Sharman's original complaint and because the contracting officer had not issued a final decision as to either the government claim or the contractor's mirror image claim before the original suit was filed, the Claims Court did not have jurisdiction over either claim. In addition, because there had been no final decision by the contracting officer on the contractor's claim for convenience termination costs, the Claims Court correctly dismissed it for lack of jurisdiction. Accordingly, we: (1) reverse the money judgment in favor of the government; and (2) remand with instructions: under the 1992 amendments to the CDA the Claims Court now has subject matter jurisdiction over the default termination challenge in the contractor's original complaint, and in light of our holdings it now requires decision.

*REVERSED AND REMANDED.*

## COSTS

Each party to bear its own costs.

SCHALL, Circuit Judge, dissenting.

On jurisdictional grounds, the court reverses the money judgment in favor of the government and remands to the United States Court of Federal Claims Sharman's challenge to the default termination.[1]

I respectfully dissent. Because I believe the Claims Court had jurisdiction over both the government's money claim and Sharman's challenge to the default termination and because the Claims Court adjudicated both claims, I would reach the merits.

## BACKGROUND

The following facts are not in dispute:

On August 7, 1989, the contracting officer issued a final decision terminating Sharman's contract for default.

On September 12, 1989, the contracting officer sent Sharman a letter termed a "notice of demand for payment of contract debt." In it, the contracting officer sought the return of unliquidated progress payments in the amount of $2,066,696.36. The letter did not state that it was a contracting officer's final decision. *Sharman Co., Inc. v. United States,* 24 Cl.Ct. 763, 765 (1991).

On February 2, 1990, purportedly under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (1988 & Supp I 1993) (CDA), Sharman filed a complaint in the Claims Court seeking, in five counts (including one count sounding in quantum meruit): (i) invalidation of the default termination; (ii) conversion of the default termination into a termination for convenience of the government; and (iii) recovery of alleged uncompensated costs incurred in performing the contract work. Complaint, pp. 10, 12–16; *Sharman,* 24 Cl.Ct. at 765.

The government filed its answer to Sharman's complaint on May 3, 1990. Subsequently, on June 11, 1990, the government moved to dismiss the complaint for lack of subject matter jurisdiction. In its motion, the government asserted that the Claims Court did not have jurisdiction over Sharman's challenge to the default termination because Sharman's complaint did not present a money claim, but rather was essentially a request for declaratory relief concerning the lawfulness of the default termination. As far as Sharman's claim for uncompensated costs was concerned, the government argued that the contracting officer's letter of September 12, 1989, did not constitute a final decision

---

15. *See also United States v. Union Gas Co.,* 832 F.2d 1343, 1357 (3rd Cir.1987), *cert. granted,* 485 U.S. 958, 108 S.Ct. 1219, 99 L.Ed.2d 420 (1988) (reversing district court dismissal of claim for lack of jurisdiction and remanding because amendment to statute while case was on appeal granted jurisdiction over claim).

1. Unless the context requires otherwise, I refer to the Court of Federal Claims as the "Claims Court." During the litigation at issue, the formal name of the Court of Federal Claims was the "United States Claims Court."

and therefore did not serve to vest the court with jurisdiction under the CDA.

On October 18, 1990, while the government's motion to dismiss was pending, the contracting officer sent Sharman a letter which was described as a "notice of the contracting officer's final decision." In the letter, the contracting officer asserted a government claim against Sharman in the amount of $1,391,240.29 for the return of unliquidated progress payments.

On December 20, 1991, the Claims Court ruled on the government's motion to dismiss. In its decision, the court granted in part and denied in part the government's motion. The court dismissed Sharman's claim for alleged uncompensated costs incurred in performing the contact work, which it referred to as a "demand for convenience termination damages." 24 Cl.Ct. at 766. It did so on the ground that the claim had not been quantified and had never been submitted to the contracting officer for a decision. *Id.* However, the court held that it did have jurisdiction to entertain Sharman's challenge to the default termination decision. *Id.* at 767–68. The court viewed the challenge to the default termination as properly before it "as a contractor's suit on a quantified government claim." *Id.* at 768. The court determined that while the September 12, 1989 letter from the contracting officer may have been legally insufficient to put before the court a money claim, the case did not involve a money claim, and the letter could serve to quantify the termination for default. The court stated:

> Sharman does not attack the amount of the government's demand but, rather, the government's right to assert such a demand in the first instance. In other words, it is the legitimacy of the default and not the dollars associated with that action that brings Sharman into court. Sharman's position ... is that it owes the government nothing because the default has no validity.

*Id.* Thus, the Claims Court held that Sharman could challenge the default termination. The court entered an order directing Sharman to file an amended complaint.[2]

On January 6, 1992, in response to the court's partial dismissal and order, Sharman filed an amended complaint. In the amended complaint, Sharman challenged the August 7, 1989 final decision terminating the contract for default and the October 18, 1990 final decision asserting a government claim against Sharman in the amount of $1,391,-240.29 for the return of unliquidated progress payments. In its amended complaint, Sharman sought the following relief: (i) denial of the government's claim for the return of unliquidated progress payments and (ii) a declaration that the termination for default was invalid. Amended Complaint at 21. Apparently in response to the Claims Court's ruling of December 20, 1991, Sharman abandoned the claim for termination for convenience costs that it had asserted in its original complaint.

On February 18, 1992, the government answered the amended complaint and filed a counterclaim seeking the return of unliquidated progress payments in the amount of $1,391.240.29. Sharman answered the government's counterclaim on March 10, 1992.

On June 11, 1992, following a trial, the Claims Court ruled from the bench. Rejecting Sharman's challenge to the default termination, the court held that the termination for default was valid. The court also held that the government was entitled to recover on the full amount of its counterclaim. On June 12, 1992, in accordance with the court's bench ruling, the Claims Court entered judgment in favor of the government in the amount of $1,391,240.29, awarded the government interest, and dismissed Sharman's amended complaint. This appeal followed.

## DISCUSSION

As the majority notes, in an appeal of a CDA case, the court reviews de novo for errors of law. *See Cooper v. United States,* 827 F.2d 762, 763 (Fed.Cir.1987) (citing *Milmark Servs., Inc. v. United States,* 731 F.2d 855, 857 (Fed.Cir.1984). Whether the Claims Court had jurisdiction in this matter is a

---

2. Sharman had moved on April 2, 1991, for leave to amend its complaint in order to contest the contracting officer's final decision of October 18, 1990. The Claims Court had deferred ruling on the motion.

question of law. *Transamerica Ins. Corp. v. United States,* 973 F.2d 1572, 1576 (Fed.Cir. 1992).

### The Government's Money Claim

The majority reverses the money judgment in favor of the government on the ground that the government's claim was not the subject of a contracting officer's final decision. In so doing, the majority rejects the contracting officer's letters of August 7, 1989, September 12, 1989, and October 18, 1990, as bases for jurisdiction. I agree that neither the August 7, 1989 letter terminating the contract for default nor the September 12, 1989 demand letter constituted a contracting officer's final decision on the government's claim. In my view, however, the contracting officer's letter of October 18, 1990, did constitute a valid contracting officer's final decision on the claim. Accordingly, I believe that the Claims Court had jurisdiction when it adjudicated the government's counterclaim.

The majority refers to the October 18, 1990 letter as "the first statement by the government of a 'claim,' *i.e.,* the assertion as a matter of right to a sum certain as presently due and owing, on which there was a final decision by the contracting officer." Thus, the majority does not view the October 18, 1990 letter as being defective in terms of form or content, and I agree. Rather, the majority rejects the letter as a basis for the Claims Court's jurisdiction over the government's counterclaim for two different reasons: "[T]he October 1990 final decision letter was issued without authority and is therefore a nullity. It also came too late to affect jurisdiction which must be assessed as of February 1990." For the following reasons, I respectfully disagree with these two points.

Turning to the first point, the majority takes the position that, by reason of the quantum meruit count in Sharman's complaint, the "progress payment 'claim' was in litigation between the parties as of the date that Sharman's original complaint was filed." Based upon this proposition, the majority states that, because the progress payment claim was in litigation, the Department of Justice gained exclusive authority to act in the case and the contracting officer was divested of authority to issue a final decision on the government's claim, citing 28 U.S.C. §§ 516–520 (1988); *Hughes Aircraft Co. v. United States,* 534 F.2d 889, 901, 209 Ct.Cl. 446 (1976); and *Durable Metal Prods., Inc. v. United States,* 21 Cl.Ct. 41, 46 (1990). I do not believe, however, that the money claim in Sharman's original complaint served to divest the contracting officer of authority to issue a final decision.

It is undisputed that, as of October 18, 1990, there had been only one contracting officer's final decision issued in this case: the August 7, 1989 final decision terminating the contract for default. There had been no final decision issued on either a money claim by Sharman or on a money claim by the government. As the majority points out, under the CDA, a final decision by the contracting officer on a claim, whether asserted by the contractor or the government, is a jurisdictional prerequisite to bringing suit in court or before a board of contract appeals.

The court in *Hughes Aircraft* stated that the statutory scheme granting the Department of Justice exclusive and plenary power to supervise and conduct all litigation to which the United States is a party is "broadly inclusive" and, as such, "must be narrowly construed." 534 F.2d at 901. In my view, it is contrary to this admonition to hold, as the court does, that a contracting officer can be divested of authority to issue a contracting officer's decision on a *government* claim (for the return of unliquidated progress payments) by the fact that there is pending in court a *contractor* claim (for convenience termination costs) over which the court lacks jurisdiction (because there has been no contracting officer's final decision) and with respect to which a motion to dismiss has been filed. Aside from the fact that this case involved separate claims by different parties, I believe that, in order to place a claim in litigation so as to bar further action by the contracting officer, a contractor must at least plead facts sufficient to establish jurisdiction in the court. This court's holdings—recognized by the majority—that a valid contracting officer's final decision is a jurisdictional prerequisite to bringing suit under the CDA

dictate this requirement. Sound policy also dictates this requirement. Otherwise, a contractor/litigant could tie the hands of the contracting officer at any time by merely filing in court a jurisdictionally defective suit. In short, I do not believe that a contracting officer can be divested of authority to issue a final decision on a government claim by the filing of a jurisdictionally defective suit on a separate contractor claim.[3]

I also respectfully disagree with the majority's statement that the October 18, 1990 final decision "came too late to affect jurisdiction...." I understand the majority to be saying that the Claims Court lacked jurisdiction over Sharman's suit on February 2, 1990, when the original complaint was filed, and on October 18, 1990, when the contracting officer issued his final decision. Therefore, according to the majority, the issuance of the contracting officer's final decision followed by the filing of Sharman's amended complaint in January of 1992 and the government's counterclaim in February of 1992 could not serve to vest the court with jurisdiction over the government's claim for the return of the unliquidated progress payments. However, for the reasons set forth below, in my view the Claims Court had jurisdiction at all times in this matter.

In *Overall Roofing and Construction, Inc. v. United States,* 929 F.2d 687 (Fed.Cir.1991), this court held that the Claims Court lacked jurisdiction to entertain a challenge to a default termination that did not include a monetary claim. In October of 1992, however, the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506 (1992) (FCA), was enacted. Section 907(b)(1) of the FCA amended 28 U.S.C. § 1491(a)(2) to give the Court of Federal Claims jurisdiction over suits brought under the CDA challenging default terminations absent a money claim. Pub.L. No. 102–572, § 907(b)(1), 106 Stat. 4519. As the majority notes, the statutory provision expanding the jurisdictional grant in 28 U.S.C. § 1491(a)(2) applies retroactive-

ly to this case. Section 907(b)(2) of the FCA provides as follows:

> (2) The amendment made by paragraph (1) shall be effective with respect to all actions filed before, on, or after the date of the enactment of this Act, except for those actions which, before such date of enactment, have been the subject of—
>
> (A) a final judgment of the United States Claims Court, if the time for appeal of that judgment has expired without an appeal having been filed, or
>
> (B) a final judgment of the Court of appeals for the Federal Circuit.

Pub.L. No. 102–572, § 907(b)(2), 106 Stat. 4519.

"Under familiar principles, the case must be decided on the basis of law now controlling, and the provisions of [the new statute] are applicable to this litigation." *United States v. Alabama,* 362 U.S. 602, 604, 80 S.Ct. 924, 926, 4 L.Ed.2d 982 (1960). In other words, this court "is required to apply the law in effect when it renders a decision, absent a congressional directive to the contrary." *Mrs. W. v. Tirozzi,* 832 F.2d 748, 755 (2d Cir.1987) (citing *Bradley v. School Bd. of Richmond,* 416 U.S. 696, 711–716, 94 S.Ct. 2006, 2016–19, 40 L.Ed.2d 476 (1974), and *Carpenter v. Wabash Ry.,* 309 U.S. 23, 27, 60 S.Ct. 416, 418, 84 L.Ed. 558 (1940)). The language of the FCA is clear. The amendment giving the Court of Federal Claims jurisdiction over challenges to default terminations "shall be effective with respect to all actions filed before ... the date of the enactment of [the FCA]" where there has not been a final judgment in the case. Here, the Claims Court declined to dismiss, and exercised jurisdiction over, Sharman's challenge to the default termination. Assuming that approach was incorrect under the law of *Overall Roofing,* the plain language of the retroactivity provision of the FCA operates to ratify the court's exercise of jurisdiction. Thus, in light of the retroactivity provision of

---

**3.** *Durable Metal Prods.* is distinguishable from this case. In that case, the action which was filed in the Claims Court and which the court concluded operated to give the Department of Justice sole authority and control in the matter was one over which the court had jurisdiction

under the CDA, unlike Sharman's convenience termination costs claim which was pending before the Claims Court at the time the contracting officer issued his final decision on October 18, 1990.

the FCA, the Claims Court is deemed to have had jurisdiction in this matter as of February 2, 1990, when Sharman filed its original complaint. For this reason, the Claims Court had jurisdiction to adjudicate the government's claim for the return of unliquidated progress payments, which was set forth in the government's counterclaim of February 18, 1992.

"The existence of federal jurisdiction ordinarily depends upon the facts as they exist when the complaint is filed." *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 830, 109 S.Ct. 2218, 2222, 104 L.Ed.2d 893 (1988). The facts that existed on February 18, 1992, when the government filed its counterclaim, were as follows: (i) the Claims Court had before it a challenge to a termination for default over which it is deemed to have had jurisdiction (through the retroactivity provision of the FCA); and (ii) there had been a contracting officer's final decision on October 18, 1990, asserting a claim against Sharman arising out of that termination for default, which decision Sharman was challenging through its amended complaint filed on January 6, 1992. These facts constituted matters within the jurisdiction of the Claims Court under the CDA. *See* 41 U.S.C. § 609(a)(1) (stating that a contractor may bring an action on a contracting officer's final decision in what was then the Claims Court).

The government's counterclaim was brought pursuant to 28 U.S.C. §§ 1503 and 2508. On the date the government filed its counterclaim, section 1503 stated, in pertinent part, that the Claims Court had "jurisdiction to render judgment upon any … demand by the United States against any plaintiff in such court." 28 U.S.C. § 1503 (1988). At the same time, section 2508 stated in pertinent part as follows:

> Upon the trial of any suit in the United States [Claims Court] in which any … counterclaim, claim for damages, or other demand is set up on the part of the United States against any plaintiff making claim against the United States in said court, the court shall hear and determine such claim or demand both for and against the United States and plaintiff.

> If upon the whole case it finds that the plaintiff is indebted to the United States it shall render judgment to that effect, and such judgment shall be final and reviewable.

28 U.S.C. § 2508 (1988).

Sections 1503 and 2508 gave the Claims Court jurisdiction to enter judgment on the government's counterclaim. The counterclaim was a response to Sharman's challenge to the default termination. The Claims Court had jurisdiction under the CDA with respect to that challenge by reason of the retroactivity provision of the FCA. Put another way, in the words of section 1503, the government's counterclaim was a "demand by the United States against a plaintiff in [the Claims Court]." That plaintiff was Sharman, and in view of the retroactivity provision of the FCA, Sharman was properly in the Claims Court under the CDA at the time of the "demand by the United States" against it.[4]

### The Challenge to the Default Termination

As far as the matter of the default termination is concerned, the majority states that the Court of Federal Claims "has subject matter jurisdiction over the default termination challenge in the contractor's original complaint, and in light of our holdings it now requires decision." I do not believe that a remand is necessary, however.

As already seen, during the litigation below, the Claims Court held that it had juris-

---

**4.** Assuming that, absent the retroactivity provision of the FCA, the Claims Court lacked jurisdiction over Sharman's challenge to the default termination, once the contracting officer issued his decision of October 18, 1990, Sharman could have filed a new complaint challenging both the default termination and the government's demand for the return of the unliquidated progress payments. If Sharman had done so, the court would have had jurisdiction in the matter. In-

stead of having Sharman file a new complaint, however, the court directed Sharman to file an amended complaint. I believe that, under these circumstances, even without the benefit of the FCA's retroactivity provision, the court properly exercised jurisdiction over Sharman's amended complaint and the government's counterclaim. *See Christian Appalachian Project, Inc. v. United States,* 10 Cl.Ct. 595, 597 (1986).

**1578**

diction over Sharman's challenge to the default termination. In its decision of December 20, 1991, the court denied the government's motion to dismiss the challenge. Subsequently, following the filing of Sharman's amended complaint, the government's answer to the amended complaint and counterclaim, and Sharman's answer to the counterclaim, trial was held. After trial, the court issued a bench ruling which addressed the merits of the validity of the termination for default. Thereafter, judgment was entered in accordance with that bench ruling. In short, Sharman's challenge to the default termination—which the Claims Court had jurisdiction to hear—has been adjudicated. For that reason, it is not a matter which, in the words of the majority, "requires decision." [5]

## CONCLUSION

For the foregoing reasons, I would hold that the Claims Court had jurisdiction in this matter and would proceed to adjudicate the merits.

5. In the BACKGROUND section of its opinion, the majority notes that on December 20, 1991, the Claims Court denied the government's motion to dismiss Sharman's challenge to the default termination. Later, in its opinion, however, the majority states that "[t]he Claims Court dismissed the portion of Sharman's original complaint seeking declaratory judgment that the government's Termination for Default was unlawful because it was unaccompanied by a monetary claim." In addition, in footnote 14 of its opinion, the majority states that Sharman's challenge to the default termination "was not decided on the merits because of lack of jurisdiction...." I do not believe, however, that the record reflects any such dismissal. Also, I believe that review of the Claims Court's bench ruling makes it clear that the court adjudicated the validity of the default termination.