**JOHNSON CONTROLS WORLD SERVICES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 97–357C.

United States Court of Federal Claims.

May 4, 1999.

---

Dale H. Oliver, Los Angeles, CA, for plaintiff. Paul E. Pompeo, Vice President and General Counsel, Johnson Controls World Services, Inc., Cape Canaveral, FL, and Roger N. Boyd, Terry L. Albertson, and Linda S. Bruggeman, Crowell & Moring, Washington, DC, of counsel.

Terry M. Petrie, Washington, DC, with whom was Acting Assistant Attorney General David W. Ogden, for defendant. Stephen R. Dooley, Brian M. Kingston, and Margaret R. Altman, Defense Logistics Agency, and Maj. Rebecca E. Pearson, United States Air Force Legal Services, of counsel.

## ORDER

MILLER, Judge.

This case is before the court on plaintiff's motion to dismiss. At issue is whether the court has jurisdiction over two claims in one of defendant's counterclaims that allegedly were not addressed by the contracting officer's decision. Argument is deemed unnecessary.

## FACTS

This case (the "357 action") is the companion to *Johnson Controls World Services, Inc. v. United States*, No. 98–612C (Fed.Cl., filed July 27, 1998) (the "612 action"). On April 28, 1999, the court granted plaintiff's partial motion to dismiss. *See Johnson Controls World Serv., Inc. v. United States*, 43 Fed.Cl. 506 (1999). Because the 357 action and the 612 action involve the same operative facts, this order will recite only those facts necessary for the proper disposition of plaintiff's motion.

The two contracts involved are among a longstanding series of contracts awarded by the Department of the Air Force (the "Air Force") for the performance of services on the Eastern Test Range (the "ETR") dating back to 1953. After numerous business reor-

ganizations, name changes, and asset transfers, Johnson Control World Services, Inc. ("plaintiff"), succeeded Pan American World Airways, Inc. ("Airways"); Pan Am World Services, Inc. ("PAWS"); and Pan Am Corporation under Contract No. F08606–78–C–0004, (the "1978 ETR contract") and Contract No. F08606–84–C–0001 (the "1984 ETR Contract").[1] On March 5, 1997, Air Force Contracting Officer Susan A. Crockett issued a final decision asserting several claims:

> This is my Final Decision and Demand for Payment of $56,115,322 for noncompliance with contractual and regulatory requirements to identify and refund the pension plan surplus (Contracts [1978 ETR contract] and [1984 ETR contract]) and provide credits for known overbilling of pension costs ([1978 ETR contract]).

This final decision is necessary due to the following:

> Your unwillingness to recognize your liability for obligations under [the 1978 ETR contract], contract clause J.33, "Funding of Pension Benefits".

> Your unwillingness to recognize the entitlements due the Air Force under [the 1984 ETR contract], contract clause H.871, "Pension Plan Revision".

> Both of these clauses represent advance agreements between the Air Force and [plaintiff] regarding the treatment of costs for a defined benefit pension plan. Your failure to perform an asset versus liability assessment and redetermine pension costs has resulted in overbilling and overfunding of your pension plan. Your noncompliance in failing to refund surplus pension dollars as required under the terms of these clauses has resulted in a credit due the Government totaling $54,923,068.

> Your unwillingness to recognize the Air Force's right to reversionary credits under [the 1978 ETR contract], [Defense Acquisition Regulation] clauses 15–201.1 (Compo-

sition of Total Cost) and 15–201.5 (Credits).

> The Government is owed $1,192,254 which represents credits received by [plaintiff] under the old Airways participating insurance contracts. These credits rightfully belong to the Government, and your failure to disclose the credits to the Government has put you in noncompliance with contract clause DAR 15–201.5 (Credits).

On May 20, 1997, plaintiff filed its Complaint in the Court of Federal Claims, and subsequently, its First Amended Complaint on September 17, 1997, seeking relief from the contracting officer's final decision. In its Answer filed December 9, 1997, defendant asserted a counterclaim setting forth two Counts: Count I, "[t]o determine the Government's rights to its equitable share of the reversionary credits resulting from termination of the ... pension fund under Defense Acquisition Regulation (DAR) 15–201.1, 'Composition of Total Cost,' and DAR 15–201.1[sic] 'Credits,'" Ans. filed Dec. 9, 1997, at 39; and Count II, "[t]o determine the Government's rights to contract price adjustments resulting from a redetermination of pension costs pursuant to ETR contract clause J.33, 'Funding of Pension Benefits,' resulting from the closure of the ETR segment." *Id.* at 41.

Count I demands $56,960,751: $54,923,068 as a result of the overbilling and overfunding of the pension plan; $1,192,254 as a result of plaintiff's failure to refund the Air Force's share of credits received by plaintiff under prior Airways participating insurance contracts; and $845,429, "additional pension rate credits from prior Airways insurance contracts" that the Air Force "discovered" after the contracting officer issued her final decision. Ans. ¶ 269.[2] Count II demands $54,-923,068 for plaintiff's "failure to comply with ETR Contract Clause J.33," as well as "interest accruing from the date of its noncompliance to the present time." *Id.* ¶ 283. On

---

1. The Air Force awarded the 1978 ETR contract to Airways on September 19, 1977, and the 1984 ETR contract to PAWS, effective October 1, 1983. Johnson Controls, Inc., purchased the assets of PAWS on May 5, 1989. In January 1991, PAWS changed its name to Johnson Controls World Services, Inc.

2. Defendant asserts one counterclaim in two counts. Only Count I, consisting of three claims, is at issue. For ease of reference, each of these three claims will be referred to as a "claim."

December 23, 1998, plaintiff filed its motion to dismiss Count I, except for the claim for $1,192,254, on the ground that the remaining two components of Count I—for $54,923,068 and $845,429—were not asserted in the contracting officer's final decision. Count II is not involved in plaintiff's motion.

## DISCUSSION

"[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *accord Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989). The court should not grant a motion to dismiss "unless it appears beyond doubt that the [non-movant] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). The court presumes that the factual allegations included in the complaint or counterclaim by the non-movant are true. *See Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988). The non-movant, however, bears the burden of establishing the court's jurisdiction over the pleadings by a preponderance of the evidence. *See id.* at 748. Once there is a challenge to the factual basis upon which jurisdiction is premised, the non-movant may lose the foregoing presumption of truth. *See McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). Evidence outside the pleadings may be considered for the purpose of resolving contested facts bearing upon the court's jurisdiction. *See Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947). Conclusory or unsubstantiated allegations shall be afforded little, if any, weight.

Plaintiff's argument has three components: (1) The only claim in the contracting officer's final decision for reversionary credits, pursuant to the DAR, was for $1,192,254.00; (2) defendant's counterclaim for $54,923,068.00 based on the DAR is not the same claim as the contracting officer's claim for $54,-923.068.00 based on contract clauses J.33 and H.871; and (3) the court has no jurisdiction over defendant's counterclaim for pension rate credits in the amount of $845,429.00, because the contracting officer never addressed such a claim in her final decision.

Under the Contract Disputes Act, "[a]ll claims by the government against a contractor relating to a contract shall be the subject of a decision of the contracting officer." 41 U.S.C.A. § 605(a) (West Supp.1998) (the "CDA"); *see Applied Cos. v. United States,* 144 F.3d 1470, 1477 (Fed.Cir.1998); *Reflectone, Inc. v. Dalton,* 60 F.3d 1572, 1575 (Fed.Cir.1995); *Sharman Co. v. United States,* 2 F.3d 1564, 1568–69 (Fed.Cir.1993); *Joseph Morton Co. v. United States,* 757 F.2d 1273, 1279–80 (Fed.Cir.1985). A valid final decision by the contracting officer is thus "a 'jurisdictional prerequisite' to further legal action thereon." *Sharman Co.,* 2 F.3d at 1568 (quoting 138 Cong. Rec. S17799 (daily ed. Oct. 8, 1992) (statement of Sen. Heflin)). Although the CDA does not specify the elements of a valid claim, the Federal Circuit has adopted the definition set forth in 48 C.F.R. (FAR) § 33.201 (1994): " '[A] written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain ... or other relief arising under or relating to the contract.' " *Reflectone,* 60 F.3d at 1575 (quoting 48 C.F.R. § 33.201). A valid claim must give adequate notice by specifying the basis and amount of liability. *See Volmar Constr., Inc. v. United States,* 32 Fed.Cl. 746, 752 (1995) (citing *Contract Cleaning Maintenance, Inc. v. United States,* 811 F.2d 586, 592 (Fed.Cir.1987)). A valid claim may be expressed in more than one document. *See Volmar,* 32 Fed.Cl. at 753–54.

Defendant insists that the contracting officer's final decision provided plaintiff adequate notice of the three claims asserted in Count I of defendant's counterclaim. According to defendant, application of the "enlarged claim doctrine," Def's Br. filed Jan. 29, 1999, at 13, should permit defendant to increase the relief requested in its counter-

claim beyond that stated in the contracting officer's final decision.

■ The Court of Federal Claims has jurisdiction over an enlarged claim if

(1) "the increase in the amount of the claim is based on the *same set of operative facts* previously presented to the contracting officer;" and (2) "the contractor neither knew nor reasonably should have known, at the time when the claim was presented to the contracting officer, of the factors justifying an increase in the amount of the claim."

*AAI Corp. v. United States,* 22 Cl.Ct. 541, 544 (1991) (quoting *Kunz Constr. Co. v. United States,* 12 Cl.Ct. 74, 79 (1987) (emphasis added)). Although additional compensation for new claims may not be sought without prior certification by a contracting officer's final decision, this is not the case for "new matters inherent in the claims previously presented." *Miller Elevator Co. v. United States,* 30 Fed.Cl. 662, 701 (1994); *accord Cerberonics, Inc. v. United States,* 13 Cl.Ct. 415, 417 (1987) ("If the complaint brought here is based on the same set of operative facts underlying the claim presented to the contracting officer, then this court has jurisdiction . . . ."); *J.F. Shea Co. v. United States,* 4 Cl.Ct. 46, 54 (1983) ("It would be most disruptive of normal litigation procedure if any increase in the amount of a claim based upon matters developed in litigation before the court had to be submitted to the contracting officer before the court could continue to a final resolution on the claim.").

■ The challenged components of Count I of defendant's counterclaim do not merely enlarge the claim asserted by the contracting officer as contemplated by the doctrine enunciated in *AAI Corp.* The only claim articulated by the contracting officer pursuant to DAR clauses 15–201.1 (Composition of Total Cost) and 15–201.5 (Credits) was for $1,192,-254.00. As described in the final decision, this claim was based on credits that matured under previous Airways insurance contracts. Count I of defendant's counterclaim for $54,-923,068.00, also advanced pursuant to DAR clauses 15–201.1 (Composition of Total Cost) and 15–201.5 (Credits), is based on the "contractor's overbilling and overfunding of its

pension plan." Ans. ¶ 267. Defendant's claim to "its equitable share of the reversionary credits resulting from termination of the . . . pension fund," *id.* at 39, under the above-cited DAR clauses, involves a set of operative facts sufficiently distinct from the facts underlying defendant's claim to recover the pension surplus pension to render the enlarged claim doctrine inapplicable. Recovery of the value of reversionary credits arising from insurance contracts is unrelated to the recovery of surplus pension assets arising from overbilling and overfunding; denial of either claim would not necessarily preclude recovery on the other. Moreover, the contracting officer's claim relying expressly on the DAR was limited to the 1978 ETR contract; defendant's counterclaim expands its claims based on the DAR to both the 1978 and 1984 ETR contracts.

Defendant notes correctly that paragraph (c) of clause J.33 states: "Pension fund adjustments will be determined in accordance with DAR Section 15, Part 2." The contracting officer's final decision for $54,923,068.00 makes clear that this amount is claimed pursuant to clause J.33 under the 1978 ETR contract and clause H.871 under the 1984 ETR contract. Thus, defendant is not barred from pursuing its rights under DAR—section 15, part 2, to the extent that the provision is incorporated by reference into clauses J.33 and H.871—to recover amounts related to the overfunding and overbilling of the pension plan. *See Volmar Constr.,* 32 Fed.Cl. at 752 (stating that Government must set forth in any claim specific basis of liability and specific amount corresponding to each basis). Defendant, however, may not (1) press a claim for the recovery of surplus pension assets solely under DAR clauses 15–201.1 (Composition of Total Cost) and 15.201.5 (Credits), or (2) incorporate DAR clauses 15–201.1 (Composition of Total Cost) and 15–201.5 (Credits) into its claim on the theory that such surplus pension assets constitute "reversionary credits" of a nature similar to those credits sought under the previous Airways insurance contracts.

■ A substantial portion of defendant's opposition discusses correspondence between the Air Force and plaintiff prior to the issu-

ance of the final decision for the purpose of establishing that plaintiff "was aware that the Government was demanding its equitable share of the pension surplus based on credits, as well as based on the operation of segment closure pursuant to contract clause J.33." Def's Br. filed Jan. 29, 1999, at 16. Included in defendant's appendices is an audit report prepared by the Defense Contract Audit Agency (the "DCAA"), dated February 28, 1996, in which the DCAA recommended:

> The above cited DAR violations are in addition to the contractor's failure to comply with ETR Contract Clauses J.33 and H.871. However, the cost impact would be the same amounts shown on Schedule 1 [for noncompliance with Clauses J.33 and H.871]. In our opinion, even if the ETR Contracts did not contain Contract Clauses J.33 and H.871, the estimated amounts shown on Schedule 1 would be due the government under DAR 15–201.5 Credits. As [plaintiff] has already provided its arguments directly to the ACO [Administrative Contracting Officer], we recommend that the ACO issue a contracting officer's decision regarding [plaintiff's] violation of DAR 15–201.5 Credits.

Even assuming that this audit report and the related correspondence to which defendant refers afforded plaintiff adequate notice of the Air Force's claim to surplus pension assets pursuant to DAR 15–201.5 (Credits), defendant misses the point. The enlarged claim doctrine will permit an increase in the amount of the claim if (1) the party requesting the increase neither knew nor reasonably should have known of the factors justifying the increase prior to issuance of the final decision, and (2) the increase is based on the same operative facts. *See AAI Corp.,* 22 Cl.Ct. at 544. It matters not that plaintiff may have been aware of the factors justifying the increase; instead, it matters what the Air Force knew or should have known at the time of the final decision. Defendant's extensive discussion of the correspondence prior to issuance of the final decision establishes that the Air Force manifestly was aware of its claim to surplus pension assets pursuant to DAR 15–201.5 (Credits); however, the Air Force contracting officer did not include such a claim in her final decision. This further underscores why defendant may not rely on the DAR as a basis independent of clauses J.33 and H.871 for the recovery of surplus pension assets.

■ In the alternative, defendant argues, "If the complaint brought before the court arises from the same set of operative facts underlying the claim in the contracting officer's final decision, the Court will have jurisdiction, even where a complaint suggests alternative legal theories for relief from that addressed in the contracting officer's final decision." Def's Br. filed Jan. 29, 1999, at 14–15 (citing *Scott Timber Co. v. United States,* 40 Fed.Cl. 492, 499–500 (1998); *Thermocor, Inc. v. United States,* 35 Fed.Cl. 480, 489–90 (1996); and *Cerberonics,* 13 Cl.Ct. at 417).

The court in *Scott Timber* acknowledged that "plaintiff's claim before this court contains slightly different legal arguments than the claims plaintiff submitted to the [contracting officer]," but concluded that plaintiff's claim in litigation was based on the essentially the same legal theory, sought the same relief, and arose from the same set of operative facts. *Scott Timber,* 40 Fed.Cl. at 499. Similarly, in *Thermocor* the court determined that the factual bases supporting plaintiff's claim before the court were submitted to the contracting officer and that plaintiff did seek any additional expenses, only that "[p]laintiff merely 'augments the legal theories underlying its claim.'" *Thermocor,* 35 Fed.Cl. at 490 (quoting *Cerberonics,* 13 Cl.Ct. at 419). Thus, for the purpose of determining whether a claim presented to the contracting officer is the same as that before the court, these cases addressed whether such claim is based on the same underlying theory, seeks the same relief, and arises from the same operative facts.

The contracting officer's decision asserts two claims: the first for $54,923,068.00, based on contract clauses J.33 and H.871; and the second for $1,192,254.00, based on DAR 15–201.1 (Compensation of Total Cost) and DAR 15–201.5 (Credits). Defendant contends that "even if the court should view the Government's counterclaim under the Credits clause [for $54,923,068.00] for the

pension surplus as an augmentation of the legal theories stated in [the contracting officer's decision]," both defendant's counterclaim and the contracting officer's decision (1) refer to the "pension surplus," (2) arise from the same operative facts, and (3) seek essentially the same relief. Def's Br. filed Jan. 29, 1999, at 15. Count I of defendant's counterclaim is based on DAR 15–201.1 (Compensation of Total Cost) and DAR 15–201.5 (Credits); the comparable claim in the contracting officer's decision is based on contract clauses J.33 and H.871.

It is evident in this case that the claim in litigation does not "merely augment[ ] the legal theories," *Thermocor*, 35 Fed.Cl. at 490, that were the subject of the contracting officer's decision, much less involve "essentially the same legal theory." *Scott Timber*, 40 Fed.Cl. at 499. Thus, although both claims arise from the same operative facts and seek essentially the same relief, because the legal theories underlying each are distinct, *Scott Timber*, *Thermocor*, and *Cerberonics* can be distinguished. To the extent that defendant contends that its demand for $54,923,068.00 in Count I of its counterclaim should be considered the "same" as the second part of the contracting officer's decision demanding $1,192,254.00, based on DAR 15–201.1 (Compensation of Total Cost) and DAR 15–201.5 (Credits), each is based on the same legal theory, but seeks vastly different relief based on a different set of operative facts.

■ In its reply plaintiff concedes that defendant's claim for $845,429.00, asserted for the first time in Count I, is based on the same set of operative facts as the contracting officer's claim for $1,192,254. *See* Plf's Br. filed Feb. 12, 1999, at 8 n.13. Both claims consist of "rate credits" under prior Airways insurance contracts. *Id.* Plaintiff also concedes that "at the time the contracting officer issued the Final Decision, the government did not know about the additional rate credit of $845,429." *Id.* at 9 n. 15. Nonetheless, plaintiff asserts that because this claim was not subject to a contracting officer's final decision, the CDA's jurisdictional requirements preclude defendant from advancing it as a counterclaim.

Defendant acknowledges that the Air Force discovered that plaintiff had received additional pension rate credits from prior Airways insurance contracts after issuance of the contracting officer's final decision. *See* Def's Br. filed Jan. 29, 1999, at 10; Ans. ¶ 269. Defendant does not attempt to demonstrate that, in light of plaintiff's concessions, it "neither knew nor reasonably should have known" about its counterclaim prior to the final decision's issue. *AAI Corp.*, 22 Cl.Ct. at 544. Nor does defendant contend that its counterclaim is the same claim as the claims addressed in the contracting officer's final decision as defined by *Cerberonics* and its progeny. Having failed to invoke either doctrinal exception to the rule that "[a]ll claims by the government against a contractor relating to a contract shall be the subject of a decision of the contracting officer," 41 U.S.C. § 605(a), the Court of Federal Claims is without jurisdiction entertain defendant's counterclaim for $845,429.00.

## CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED**, as follows:

1. Count I of defendant's counterclaim seeking recovery of $54,923,068.00 as "reversionary credits," based on DAR 15–201.1 (Compensation of Total Cost), and DAR 15–201.5 (Credits), is dismissed for lack of subject matter jurisdiction. Defendant is not precluded from pursuing its rights under DAR Section 15, Part 2, to the extent that it is incorporated by reference into clauses J.33 and H.871, to recover the same amount surplus pension assets as a result of overbilling and overfunding of the pension plan.

2. Count I of defendant's counterclaim seeking recovery of $845,429.00 in pension rate credits from prior Airways insurance contracts is dismissed for lack of subject matter jurisdiction.